**Lawrence E. MARTIN, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 84–3360**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1984.

---

Bryan Pedeaux, Richard B. Stricks, New Orleans, La., for plaintiff-appellant.

John P. Volz, U.S. Atty., Nancy A. Nungesser, Asst. U.S. Atty., New Orleans, La., for defendant-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

Lawrence Martin appeals an order of the district court upholding the decision of the Secretary of Health and Human Services to deny him disability insurance benefits. He urges, first, that no substantial evidence supports the Secretary's finding that his breathing impairment—chronic pulmonary obstructive disease, chronic bronchitis, and episodic asthma—is not "severe." (The non-severity finding by itself disqualified Martin from receiving disability benefits.) Martin also urges that the evidence before the Secretary required her to find that his impairment fits a *per se* disability category. We agree with Martin and reverse.

*Facts*

Martin is now fifty-five years of age and practically illiterate. From 1958 until the mid-1960's, he worked as a deckhand on tugboats in the New Orleans area. He then became a tugboat pilot and worked at that job until January 1980.

In February 1980, Martin reported to a United States Public Health Service Hospital complaining of shortness of breath. Shortly thereafter, Public Health Service physicians recommended Martin "permanently not fit for duty." As a result, the United States Coast Guard required Martin to surrender his pilot's license.

Martin applied for disability benefits on March 13, 1981. A disability examiner determined that Martin had chronic obstructive pulmonary disease which caused "breathing complaints and occasional attacks." He nevertheless determined that Martin was not disabled because his condition was not "severe for purposes of this program." Upon a requested reconsideration, another disability examiner affirmed the finding of non-severity.

On November 5, 1981, Martin received a hearing before an administrative law judge. The administrative law judge accepted into evidence medical records establishing Martin's extensive history of medical treatment between February 1980 and the date of the hearing.

There were at least nine instances of outpatient treatment at the United States Public Health Service Hospital (USPHSH). (February 21, 1980; April 2, 1980; May 30, 1980; July 16, 1980; March 4, 1981; May 28, 1981; June 18, 1981; July 1, 1981, and July 6, 1981.) The records of the treatments confirm diagnoses of chronic obstructive pulmonary disease, asthma and chronic bronchitis. They show that Martin

"wheezes," "gets short of breath with minimal exertion," and has "scattered rhonchi," a "history of several attacks of bronchial asthma," "expiratory wheezes," and a continuing need to take seven or more medications.

The records also established four instances of emergency room treatment. (October 30, 1980; October 31, 1980; December 12, 1980; and unknown date). On one of these occasions, Martin was taken to the emergency room by ambulance. The records of these emergency room visits describe Martin as short of breath, wheezing, coughing "greenish-yellow sputum," and having "diffuse rhonchi." In the emergency room, Martin was treated with intravenous injections and inhalation therapy.

The records further established five instances of hospitalization, for twenty-three, three, fourteen, six, and six days respectively. (March 3, 1980; June 3, 1980; October 31, 1980; December 16, 1980; and June 5, 1981.) On certain hospitalizations, Martin was treated by intravenous injection for multiple attacks. On two occasions during hospitalization, Martin's attacks became so severe he was placed in an intensive care unit.

The hospitalization records show that Martin complained "of shortness of breath over the previous 5 to 6 weeks with progression to the point he could not take care of himself." One report describes Martin as "in obvious respiratory distress lying on a stretcher having audible wheezing." Martin produced "dark green and thick" sputum. Physicians prescribed aminophylline, prednisone, catapres, hydrochlorothiazide, potassium chloride, ampicillin, vanceril inhaler, steroids, and other medication. They variously diagnosed Martin as suffering from chronic bronchitis, chronic respiratory failure, chronic obstructive pulmonary disease, asthma (acute bronchospastic episode), and bronchospastic episodes. One record shows Martin's prognosis as "poor."

Finally, there were records of clinical testing. Hospital tests, administered *after* his recovery from attacks, show approximately normal lung function. Martin also underwent breath capacity testing by non-treating physicians on April 21, 1980, August 19, 1980, and July 16, 1981. The first testing showed breathing capacity as low as 51% of expected capacity, "findings compatible with chronic obstructive pulmonary disease." The second testing showed breathing capacity as high as 78% of expected capacity, "consistent with obstructive ventilitory impairment." The third testing showed breathing capacity as high as 85% of expected capacity; the report of this test diagnosed Martin as having a history of bronchitis and chronic obstructive pulmonary disease but noted the test results were "compatible with normal spirometry."

In his testimony before the administrative law judge, Martin stated: "I just stay around the house and sit around and watch a little television and when an attack comes on me I have to lay flat down on the bed." Martin testified that he cannot carry a bag of groceries or help his wife with house work, and that smoke, perfume, deodorant, and automobile exhaust aggravate his condition. Martin testified that, during an attack, he cannot get out of bed to walk across the room or go to the bathroom and that he had these attacks two or three times a week.

The administrative law judge accepted the affidavit of Martin's wife, which stated: "Periodically my husband can't breathe and he must lay flat in bed. My husband is unable to exercise, to mop, cut grass, vacuum, sweep, or do anything with any physical activity at all. A lot of times he cannot even walk from one room to another." The administrative law judge also accepted a proffer that Martin's neighbor would, if he testified, corroborate Martin and his wife.

The administrative law judge found that Martin had a "history of bronchitis and chronic obstructive pulmonary disease." Based solely on the results of tests measuring Martin's breathing capacity, however, the administrative law judge found that these impairments were not "severe." The Appeals Council adopted the administrative law judge's decision, stating only that there

was substantial evidence that Martin's impairment was not "severe."

In the action Martin filed below, a magistrate concluded that Martin had the capacity to do sedentary work, had engaged in skilled or semi-skilled employment, and possessed so-called "transferable" skills. Applying vocational guidelines used by the Secretary, the magistrate concluded there was substantial evidence to support a finding of no disability. The district court adopted the decision of the magistrate and entered final judgment against Martin.

### I. Statutory and Regulatory Scheme and Standard of Review

As part of the Social Security Act, Congress provided for the payment of disability insurance benefits to insured workers who become disabled. 42 U.S.C. § 423. Disability is defined, in all cases other than blindness, to mean the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further, "an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, *considering his age, education, and work experience,* engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). (Emphasis added.)

Pursuant to these statutory provisions, the Secretary has promulgated regulations that establish a five-step disability-determining process. 20 C.F.R. § 404.1520 (1984). First, a claimant who at the time of his disability claim is engaged in substantial gainful employment is not disabled. 20 C.F.R. § 404.1520(b) (1984). Second, the claimant is automatically denied benefits if the asserted impairment is not severe, without consideration of his residual functional capacity, age, education or work experience. 20 C.F.R. § 404.1520(c) (1984).

Third, if the asserted impairment is severe, the claimant is *per se* disabled if his impairment meets or equals an impairment described in 20 C.F.R., Subpart P, Appendix 1 (1984). 20 C.F.R. § 404.1520(d) (1984). Fourth, a claimant with a severe impairment that is not *per se* disabling is denied benefits if he is capable of doing past relevant work. 20 C.F.R. § 404.1520(e) (1984). Fifth, a claimant who cannot return to past relevant work is denied benefits if he can engage in work available in the national economy. 20 C.F.R. § 404.1520(f) (1984).

The Secretary eliminated Martin at step 2. The district court eliminated Martin at step 5. Martin claims that step 3's *per se* disability provisions should have been applied. In considering these respective contentions, we are guided by the substantial evidence standard of review. *Taylor v. Heckler*, 742 F.2d 253, 256 (5th Cir.1984). "Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

> This standard of review is not a rubber stamp for the Secretary's decision and involves more than a search for evidence supporting the Secretary's findings. We must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Secretary's findings.

*Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984). *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

For reasons to be explained more fully in II, *infra*, we hold that the Secretary was in error in eliminating Martin at step 2, because the impairment was more than a slight abnormality with minimal effect on his ability to work, the test for elimination at step 2. We likewise find that the district court erred in eliminating Martin on a step 5 analysis, not only because it was inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the Secretary, but also because the district court's application of step 5 standards was erroneous as a matter of law.

## II. *Severity of Impairment*

An impairment "is not severe if it does not significantly limit [the claimant's] physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1521(a) (1984). These include numerous activities; examples relevant here are "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b)(1) (1984).

The "significantly limit" language of the regulation must be understood in light of its history. A predecessor regulation prevented a disability finding if there was only a "slight abnormality." 20 C.F.R. § 404.1502(a) (1968). This "slight abnormality" regulation was replaced by a "severe impairment" regulation in 1978 which, however, did not change in essential meaning the predecessor regulatory standard. *Brady v. Heckler*, 724 F.2d 914, 919 (11th Cir.1984). The Second Circuit has noted that the "severe impairment" recodification equates with the predecessor "slight impairment" standard:

> The Secretary's preamble in the Federal Register reveals that the "severity" regulation, as originally promulgated in 1978, was meant to clarify the 1968 regulation's terms "a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of slight abnormality" but was not intended to "alter the levels of severity for a finding of ... [']not disabled['] on the basis of medical considerations alone," 43 F.R. 55358. The recodification in 1980 evinces no change in this expression of the Secretary's intent, 45 F.R. 55574.

*Chico v. Schweiker*, 710 F.2d 947, 954 n. 10 (2d Cir.1983).

Further, the Eleventh Circuit has noted that, in a document titled *Appeals Council Review of Sequential Evaluation Under Expanded Vocational Regulations* (1980), the Appeals Council stated that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984). In *Brady*, the Eleventh Circuit adopted the Appeals Council's definition of severe, adding that the severity requirement means only that the alleged impairment must cause a limitation on basic work activity that is not "meaningless." *Brady, supra*, at 920. *See Taylor v. Schweiker*, 739 F.2d 1240, 1243 n. 2 (7th Cir.1984); *Evans v. Heckler*, 734 F.2d 1012, 1014 n. 3 (4th Cir.1984).

We recently adopted this construction of the Secretary's regulation as stated in *Chico* and *Brady, supra*. *Estran v. Heckler*, 745 F.2d. 340 (5th Cir.1984). In *Estran*, however, we remanded because the Secretary may have found no severe impairment without reference to the slight abnormality definition of non-severity. Nevertheless, we specifically adopted the view that the severity requirement was equivalent to the previous slight abnormality requirement. We referred approvingly to the holding of the Eleventh Circuit that "an impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Estran, supra*, 745 F.2d 340 at 341 (quoting *Brady* ).

We find that the *Estran-Brady-Chico* formulation of the step 2 non-severity elimination test is correct and accords with the Secretary's understanding of her own regulations. Moreover, it accords with the text of 42 U.S.C. § 423(d), quoted at I, *supra*, which does not state an absolute severity requirement. Finally, it is consistent with the apparent meaning of "significantly limit ... basic work activities" as stated in 20 C.F.R. § 404.1520(c) (1984).

Repeatedly diagnosed asthma, chronic obstructive pulmonary disease, and chronic bronchitis are obviously not slight, insignificant, or meaningless impairments. The Secretary herself lists them as possible *per se* disabling impairments. 20 C.F.R.,

Chapter III, Subpart P, Appendix 1, § 3.00 (1984). Moreover, the diagnoses of these serious ailments in this case were accompanied by overwhelming evidence of repeated hospitalization and emergency room, outpatient, and intensive care treatment and by uncontradicted evidence that Martin suffers attacks two or three times a week, often rendering him unable to stand or walk.[1]

The Secretary could have reached a different result only by ignoring this evidence. It appears that is what happened. The administrative law judge's decision found that Martin's impairments are not severe because they "are very mild and not in any way physically restricting." He based that finding on (1) Martin's testimony "as to his daily activities" and (2) "[t]he minimal clinical findings." Martin, however, testified that he cannot even carry a bag of groceries and is, for the most part, house-ridden. And it is inconceivable that clinical findings are "minimal" when they show severe shortness of breath, wheezing and vomiting, and symptoms so severe that Martin daily took as many as seven or more medicines and required intensive care treatment on two occasions.

■ At bottom, it appears that the Secretary reached her decision by focusing only on the results of testing of Martin's breathing capacity. This was an impermissibly restrictive view of the evidence. The results of those tests do not show Martin's functioning capability and do not erase the reality that Martin required repeated hospitalization, emergency room and intensive care treatment and is practically house-ridden, suffering two or three incapacitating attacks per week. Martin's physicians, confronted with most of these test results, found him permanently unfit for duty, hospitalized him, prescribed extensive medication, and without exception diagnosed him as suffering from asthma, chronic bronchitis, and chronic obstructive pulmonary disease.

The issue here did not require the evaluation of conflicting medical evidence, for the outpatient, emergency room and hospital medical reports uniformly establish the nature of Martin's impairment and its debilitating effect. The breathing tests show only that Martin enjoyed a range of breathing capacity in a fume-free environment when not suffering an attack. The tests do not purport to cast doubt on Martin's history of attacks. Nor do they measure his ability to sit, stand, walk, exert himself or tolerate the air in a particular work place. Moreover, the test results confirm Martin's past diagnoses. Simply put, the Secretary misused the results of the breathing tests and improperly ignored all other evidence of record. *See Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980) (absent good cause, "substantial weight" must be accorded opinion of treating physicians).

Finally, we note that this case is quite similar to a recent Fourth Circuit decision. *Evans v. Heckler*, 734 F.2d 1012, 1014–15 (4th Cir.1984).[2] In *Evans*, the claimant's

---

**1.** Martin's testimony was relevant to the severity question, and the Secretary did not expressly evaluate it or explain her evaluation, as the courts have suggested is required in cases such as the present, where the claimant's subjective complaints are shown to be medically significant to the issue of determining his disability, *see, e.g., Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir.1981).

It does appear that the administrative law judge implicitly credited Martin's testimony, as his decision purports in part to rest on it. In addition, Martin's testimony was internally consistent, consistent with his wife's affidavit and uncontradicted by any other witness. His complaints clearly derived from medically determined impairments, and the medical records showed numerous episodes of pulmonary dis-

tress consistent with Martin's testimony. These objective manifestations were obviously relevant to a determination of the claimant's credibility, and here, in the absence of any contrary evidence, it would have been error to reject Martin's testimony as incredible. *See Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984); *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir.1979). *See generally Taylor v. Heckler*, 742 F.2d 253, 256 n. 2 (5th Cir.1984) (Secretary may, for proper legal reasons, reject claimant's testimony "where the medical evidence is inconclusive").

**2.** We note also a significant number of reversals of non-severity determinations, indicating that the Secretary is misapplying the severity test. *E.g., Estran v. Heckler*, 745 F.2d 340 (5th Cir.

chief complaint was asthma with bronchitis, pulmonary emphysema and chronic obstructive pulmonary disease. *Id.*, 734 F.2d at 1013. Much like Martin, the claimant testified that his breathing problem forced him to spend substantial time lying down at home. *Id.* Also like Martin, the claimant in *Evans* was hospitalized repeatedly. *Id.*, 734 F.2d at 1014. As the USPHSH has declared Martin permanently unfit for duty, the Veterans Administration declared the claimant in *Evans* permanently disabled. *Id.* Dr. Carroll's testing of the present claimant Martin showed him to have a lung capacity as much as 85% and as low as 51% of normal, while testing of the claimant in *Evans* showed his lung capacity to be as much as 68% of normal. *Id.* As here, the Secretary determined the claimant in *Evans* not to have a severe impairment. *Id.* The Fourth Circuit evidenced no hesitation in reversing and directing an award of benefits:

> [T]he medical evidence overwhelmingly supports the claimant's position that he is unable to work, and there is insubstantial evidence in the record to support the ALJ's conclusion that Evans' disabilities are "not severe." Because the uncontroverted evidence reveals that Evans is permanently and totally disabled, we conclude that the Secretary is obliged to find in favor of the claimant in this case.

*Id.* at 1015.[3]

As will be shown in IV, *infra*, we similarly conclude that Martin has, in fact, proved a severe impairment that is *per se* disabling under Appendix 1 of the regulations.

### III. *Substantial Gainful Employment*

The district court, upon the magistrate's recommendation, found that substantial evidence showed Martin capable of engaging in substantial gainful employment. It did so by applying the Secretary's vocational guidelines. 20 C.F.R., Chapter III, Subpart P, Appendix 2. In particular, it applied Table No. 1, Rule 201.11, which provides that a person is not disabled if he is (1) closely approaching advanced age (age 50 to 54), (2) has limited education or less, (3) is skilled or semi-skilled, (4) has transferable skills, and (5) has a residual functional capacity permitting sedentary work.

The Secretary cites, and we have found, no precedent in this or any circuit permitting the federal courts to make a disability determination based on the vocational guidelines when the Secretary has not applied the guidelines or made the necessary subsidiary findings. We are doubtful that this is appropriate as a general matter and conclude that it led to error in this particular case. *Cf. Delgado v. Heckler*, 722 F.2d 570, 574 (9th Cir.1983) (reversing non-severity determination and declining to "make assumptions" necessary to determine ability of claimant to return to former work).

First, when nonexertional limitations are shown, a disability decision cannot be made solely on the basis of the vocational guide-

1984); *Taylor v. Schweiker*, 739 F.2d 1240, 1242–43 (7th Cir.1984); *Smith v. Heckler*, 735 F.2d 312, 316–17 (8th Cir.1984); *Brady v. Heckler*, 724 F.2d 914, 920–21 (11th Cir.1984) (shortness of breath); *Reinhart v. Secretary of HHS*, 733 F.2d 571, 572–74 (8th Cir.1984); *Delgado v. Heckler*, 722 F.2d 570, 573 (9th Cir.1983).

**3.** A similar result was reached in *Switzer v. Heckler*, 742 F.2d 382 (7th Cir.1984), a case involving chronic obstructive pulmonary disease. *Cf. Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984) (affirming determination of non-severity where physical capacities examination had sitting, standing, and walking ability required for sedentary work); *Hagan v. Schweik-*

*er*, 717 F.2d 1229, 1230 (8th Cir.1983) (affirming determination of non-disability due to respiratory problems where claimant "testified that he drives a motor vehicle daily, cuts grass, uses chain and hand saws to cut wood, loads and unloads wood, uses a sledge hammer to split wood, drives 158 miles to his trailer in the country, fishes, and receives only minimal therapy"); *Lofton v. Schweiker*, 653 F.2d 215, 218 (5th Cir.1981) (affirming determination of non-severity as to asserted heart, liver, lung and blood pressure impairments; clinical tests showed all organs to be functioning normally or correctable by medication; mentioning no history of hospitalization or illness associated with impairments).

lines.[4] Martin asserts nonexertional limitations caused by a breathing impairment that is aggravated by fumes, including smoke, perfume, deodorant and car exhaust. *Allen v. Secretary of Health and Human Services,* 726 F.2d 1470, 1472–73 (9th Cir.1984) (respiratory problems aggravated by dust or fumes are nonexertional impairment). Second, we find no basis in the record to conclude that Martin has the residual functional capacity to engage in sedentary work, a finding necessary for application of Table No. 1.[5] Third, the record discloses no evidence that Martin developed transferable skills as a tugboat pilot, a critical finding because non-transferability would, under Table 1, require a disability finding. Rule 201.10. And fourth, Martin is now fifty-five years old, which places him in the "advanced age" category (age 55 and over), 20 C.F.R. § 404.1563(d) (1984); this affects the transferability issue.[6]

## IV. *Per Se Impairment*

■ The Secretary has determined that certain impairments result in an automatic finding of disability. 20 C.F.R. §§ 404.-1520(d), 404.1525. Those impairments are listed at 20 C.F.R., Chapter III, Subpart P, Appendix 1. Part A, Section 3 of Appendix 1 lists those impairments of the respiratory systems which result in a disability finding. Section 3.00 C states:

> When a respiratory impairment is episodic in nature, as may occur in complications of bronchiectasis and asthmatic bronchitis, the frequency of severe epi-

4. 20 C.F.R., Chapter III, Subpart P, Appendix 2 ("Medical-Vocational Guidelines"), § 200.00(e) provides:

(e) Since the rules are predicated on an individual's having *an impairment which manifests itself by limitations in meeting the strength requirements of jobs,* they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., certain mental, sensory, or skin impairments. In addition, some impairments may result solely in postural and manipulative limitations or *environmental restrictions. Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., an inability to tolerate dust or fumes.*

(1) In the evaluation of disability where the individual has solely a nonexertional type of impairment, determination as to whether disability exists shall be based on the principles in the appropriate sections of the regulations, giving consideration to the rules of specific case situations in this Appendix 2. The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.

(2) However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's *maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further dimin-*

*ished* in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which *cannot* be wholly determined under the rules of this Appendix 2, *full consideration must be given to all of the relevant facts in the case* in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

(Emphasis added.)

5. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a) (1984).

[A] claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which real people work in the real world.

*Allred v. Heckler,* 729 F.2d 529, 533 (8th Cir. 1984).

6. In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.

20 C.F.R., Chapter III, Subpart P, Appendix 2, § 201.00(f).

sodes despite prescribed treatment is the criteron for determining the level of impairment. Documentation for episodic asthma should include the hospital or emergency records indicating the dates of treatment, clinical findings of presentation, what treatment was given and for what period of time, in the clinical response. Severe attacks of episodic asthma, as listed in Section 3.03B are defined as prolonged episodes lasting at least several hours, requiring intensive treatment such as intravenous drug administration or inhalation therapy in a hospital or emergency room.

According to Section 3.03 B, asthma is disabling if there are

[e]pisodes of severe attacks (see 3.00C) in spite of prescribed treatment, occurring at least once every two months, or on an average of at least six times a year and prolonged expiration with wheezing or rhonchi between attacks.

The medical records in this case unquestionably establish that Martin falls into this category. His diagnosis consistently has been of asthma, chronic bronchitis, bronchospastic episodes, and chronic obstructive pulmonary disease. (The January 7, 1981 USPHS outpatient report lumps these diagnoses under the general description "bronchial asthma.") For this condition, Martin was hospitalized five times between the claimed onset of disability, January 1980, and his hearing before the administrative law judge, November 1981. In each of these hospitalizations, Martin received "intensive treatment such as intravenous drug administration or inhalation therapy." The five hospitalizations account for more than five "severe attacks" because Martin suffered multiple attacks during as well as prior to hospitalization. Moreover, the medical records demonstrate four emergency room episodes. These total to over nine severe attacks in a fifteen-month period and put Martin squarely within the average of six severe attacks in a year.

The medical records also demonstrate prolonged expiration with wheezing between attacks. The record of May 28, 1981 outpatient treatment notes, for example, that Martin experiences "expiratory wheezes." The earlier May 30, 1980 outpatient treatment record shows that Martin experienced shortness of breath and that he "wheezes." The record of Martin's June 5, 1981 hospitalization showed "marked inspiratory and expiratory wheezing in all fields." Moreover, Martin himself testified to his chronic respiratory distress, indicating two or three attacks per week. His testimony, while not establishing two or three attacks requiring intensive treatment in each week, certainly fulfills the requirement in Appendix 1, Section 3.03 B, *supra*, that there be distress in the periods between severe attacks.

## V. *Conclusion*

We express our concern that three and one-half years have elapsed since Martin applied for benefits to which he is entitled. The record indicates that Martin is not wealthy. He is, rather, typical of claimants who have worked hard for decades and who, upon finding themselves unable to continue work, apply for the insurance benefits for which they have paid premiums from every paycheck they have ever earned. To delay benefits for over three and one-half years to such persons requires some justification.

Unfortunately, little justification is shown for the extensive delay in this case. The Secretary denied benefits upon a finding of no severe impairment even though (1) the Appeals Council's previously-stated understanding of the severity requirement clearly indicates that Martin suffers from a severe impairment and (2) it is plain that Martin's history of emergency room treatment, intensive care treatment, and general hospitalization establishes the severity and *per se* disabling nature of his impairment. On judicial review, the Secretary has urged the court to uphold the denial of benefits on plainly inapplicable grounds, i.e., consideration of the vocational guidelines (by the court itself for the first time on judicial review)—which, at best for the Secretary, would have resulted in a remand for administrative consideration of this issue.

This scenario, at the least, is not in keeping with the remedial purposes of the disability provisions of the Social Security Act and may in future cases expose the Secretary to liability for costs, attorneys' fees, and other expenses under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412; 5 U.S.C. § 504; *Cornella v. Schweiker*, 728 F.2d 978 (8th Cir.1984). We do not consider that issue here because it was not raised by the appellant.

For the foregoing reasons, we reverse and remand to the district court for entry of an order directing the Secretary to grant Martin's application for disability benefits.

REVERSED and REMANDED.