**Ella McCRUTER, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 85–7575.**

United States Court of Appeals, Eleventh Circuit.

June 25, 1986.

As Amended July 9, 1986.

---

George W. Harris, Legal Services Corp. of Alabama, Tuscaloosa, Ala., for plaintiff-appellant.

E.T. Rolison, Jr., Asst. U.S. Atty., Mobile, Ala., David L. Stephens, Atlanta, Ga., for defendant-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge:

This is an ordinary review under 42 U.S.C. § 405(g) of a decision of the Secretary of Health and Human Services denying the application of Ella L. McCruter for disability benefits [1] under 42 U.S.C. § 1381 *et seq.* providing "supplemental security income" (commonly referred to as SSI) for those over 65, blind or disabled, who are eligible under certain indigence tests set forth in § 1382 *et seq.* Disability, for SSI purposes, is defined by 42 U.S.C. § 1382c(a)(3)(A) as inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." [2]

The basic issue in the case at bar is thus whether the Secretary's determination that

---

* Honorable Edward Dumbauld, Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

1. We are not concerned with the problems which have arisen with respect to withdrawal of benefits after a prior determination of disability, and which led to enactment of the Social Security Disability Benefits Reform Act of October 9, 1984, 98 Stat. 1794.

2. The SSI definition is the same as that established in 42 U.S.C. § 423(d)(1)(A) for ordinary Social Security disability benefits provided under 42 U.S.C. § 423.

appellant is not disabled is supported by substantial evidence. In that connection, an administrative determination would not be supported by substantial evidence if the evidence merely supported a conclusion based upon a misinterpretation of the governing statute or upon an otherwise legally erroneous standard.

In particular, a determination must be stricken down if it rests upon a regulation issued by the Secretary which as interpreted and applied by the administrative agency operates to deny disability benefits to applicants "who are in fact unable to perform substantial gainful activity" when the intent of the Congress in the applicable legislation was to grant such benefits to such persons. In other words, the Secretary does not have power to establish additional requirements over and above what Congress has specified. "Congress has stated that the Act itself contains the specific requirements a claimant must meet to be considered disabled. *See* 1967 U.S.Code Cong. & Ad.News at 2883. The Secretary does not have the authority ... to deny benefits to individuals who are disabled within the meaning of section [1382c(a)(3)(A) ]." This is clearly explained in a recent Fifth Circuit case, *Stone v. Heckler,* 752 F.2d 1099, 1103–1105 (5th Cir. 1985), which cites and follows our own case of *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984), where we said

> An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education,

or work experience. Under this definition of non-severe impairment, it is clear that the Secretary's determination that Brady was not suffering from a severe impairment is not supported by substantial evidence.

We hold that the same is true of the administrative determination with respect to McCruter in the case at bar.

To make clear the reasons for our holding it will be helpful to consider the pattern of regulations by the Secretary applicable to processing McCruter's application and the evidence contained in the administrative record.

The SSI regulations are found in 20 CFR (Apr. 1, 1985 ed.) § 416.101 *et seq.* The disability provisions begin at § 416.905.

As well explained in *Stone, supra,* 752 F.2d at 1100–1103, the evaluation of disability claims is now made pursuant to § 416.920 [3] under a "sequential evaluation process" where if a determination is possible at one stage it is not necessary to consider the matters that would be pertinent at the next or subsequent stages.

At the first step in the sequence, an applicant is immediately found not disabled if he is working. The second step mandates that *"You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities,[4] we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." [§ 416.920(c) ].

---

**3.** "We review any current work activity, the severity of your impairment(s), your residual functional capacity and your age, education, and work experience. If we can find that you are disabled or not disabled at any point in the review, we do not review further."

**4.** Defined in § 416.921(b):

(b) *Basic work activities.* When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—

(1) Physical functions such as walking, standing, sitting, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

If the claimant's impairment is listed in Appendix 1 of the regulations [5] or is equivalent to an impairment so listed, "we will find you disabled." The next step is to determine residual functional capacity [6] and see if it permits return to the applicant's former work, or if not, to any other type of work available in the national economy.[7] In the latter connection age, education, and work experience is to be considered.[8] In the case of a person "closely approaching advanced age" [50–54], age and limited work experience may seriously affect ability to perform a new kind of work.[9]

As explained in *Brady, supra,* 724 F.2d at 919–920, and in *Stone, supra,* 752 F.2d at 1104–1105, and in *Martin v. Heckler,* 748 F.2d 1027, 1032 (5th Cir.1984), the various regulations as revised from time to time, are not significantly different in meaning; and it is clear that in essence they adhere to the statutory criterion of inability to work.

They merely supply a detailed elaboration of common facets of work activity, such as walking, standing, sitting, lifting, and the like. On their face the regulations do not appear to contravene the statutory standards at all.

Nevertheless, it appears as a matter of fact that the Secretary has used the regulations as a means of denying benefits to persons who are in fact "unable to engage in substantial gainful activities." *Stone, supra,* 752 F.2d at 1104. This is of course impermissible and violates the statute. Likewise it violates the statute to short-cut the procedure prescribed by Congress and make a determination of non-disability by disregarding vocational factors specified in the statute. As well said in *Baeder v. Heckler,* 768 F.2d 547, 551 (3rd Cir.1985),

"Both the statute and the legislative history speak in terms of medical and vocational factors and emphasize the importance of the relation between the two."

In other words, the "severity" of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality. For example, suppose a person's job consists in selecting by means of a computer a set of stocks with appropriate price to earnings ratio for inclusion in a market letter to investors. Suppose then that by reason of an automobile accident the financial forecaster has both legs amputated, but can still operate the computer. If medical factors alone are considered, this would certainly be a "severe" impairment; but when vocational factors are taken into account, the victim can still perform the work pertaining to his job and can not be considered as having a "disability" qualifying him for benefits.

The same necessity of considering both physical and economic factors is commanded by the statute, whether the result is favorable to the fisc or to the applicant for benefits. A converse example might be a slight deformity resulting from surgery, which would not be considered as severe in the case of an ordinary person, but which would prove extremely disabling vocationally in the case of a baseball pitcher, a surgeon, or a singer.

Hence it becomes vital, in cases where, as in the case at bar, the ALJ cites and relies upon the regulations, to scrutinize with care his procedure and to examine the evidence, to be sure that we are not confronted with another instance of misuse of the "severity" determination as a means of

---

**5.** Appendix 1 to Part 404, Subpart P, follows § 404.1599 (pp. 301–334). Appendix 2 (pp. 334–341) deals with residual functional capacity (see note 6, *infra.*)

**6.** Defined in § 416.945. It refers to "capacity for work activity on a regular and continuing basis."

**7.** § 416.966.

**8.** § 416.961.

**9.** § 416.963(c).

denying benefits to an applicant who is in fact "unable to engage in substantial gainful activity" where the record evidence in fact demonstrates the existence of a medically established impairment which does in reality result in inability to work.

We are constrained to conclude that the administrative agency here (as in *Martin, supra,* 748 F.2d at 1033) reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole. *Martin, supra,* 748 F.2d at 1031; *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 487–88, 71 S.Ct. 456, 463–65, 95 L.Ed. 456 (1951).

Stated succinctly, the ALJ attached too much weight to the supposed "exaggeration" by appellant of her pain. Such a personal idiosyncrasy should not be permitted to detract from the objectively established medical facts which demonstrate her inability to work. This is not a "pain" case, where pain itself is the only disabling factor upon which the applicant relies to demonstrate disability.[10] In particular, the ALJ disregarded the testimony of the government's own witness, a vocational expert who testified that an individual with appellant's impairments would be restricted to sedentary work.

Since, as the ALJ found, "The claimant is 52 years of age, has an eighth grade education, and has past work experience as a field hand," it would appear that under the "grid" table[11] a determination of "Disabled" would be dictated.[12] In that connection it must also be remembered that in evaluating capacity to work the regulations recognize the physical and economic reality that "work activity on a regular and continuing basis" is what is to be measured. A person able to work fifteen minutes in the morning and fifteen minutes in the evening could not rationally or realistically be treated as having residual functional capacity for engaging in any substantial gainful activity.

The applicant's own testimony lacks precision and evinces idiosyncrasies and can be considered as merely a layperson's description of her infirmities. But assuming that the ALJ disregarded it entirely, he could have reached the result he did only by ignoring the objective medical evidence regarding her physical condition and also the evidence of the government's vocational expert, that a person with applicant's infirmities could do only sedentary work.

Accordingly the judgment of the District Court is REVERSED, with directions to remand the case to the Secretary with directions to grant McCruter's application for disability benefits.

---

**10.** Of course we do not hold that pain alone can never suffice to constitute an abnormality "demonstrable by medically acceptable clinical and laboratory diagnostic techniques" as required by 42 U.S.C. § 1382c(a)(3)(C). See, *e.g., Bloodsworth v. Heckler,* 703 F.2d 1233, 1242 (11th Cir.1983); and the amendment to 42 U.S.C. § 423 added by § 3(a)(1) of the Act of October 9, 1984, 98 Stat. 1794. Nor do we deny that in a pure pain case the credibility of the applicant's subjective symptoms should be scrutinized with care (although in some cases the plaintiff's bar might be able to corroborate such symptoms by

a new technique of measuring heat or inflammation as indicia of pain).

**11.** Age 52 is treated as "closely approaching advanced age"; 8th grade is considered "limited or less" educationally; and appellant's work as a field hand would be deemed "unskilled."

**12.** Rule 201.09 in Table No. 1, Appendix 2, part 404, subpart P, page 337 (Apr. 1, 1985 edition).