**Gloria DENAIS**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES.**

Civ. A. No. 91–2007.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

April 22, 1993.

John D. Thompson, Jr., Acadiana Legal Svc. Corp., Lafayette, LA, for plaintiff.

John A. Broadwell, Asst. U.S. Atty., Shreveport, LA, for defendant.

## JUDGMENT

HAIK, District Judge.

This matter was referred to United States Magistrate Judge Mildred E. Methvin for her Report and Recommendation. After an independent review of the record in this case, the Court concludes that the Report and Recommendation of the magistrate judge is correct and this Court adopts the conclusions of the magistrate judge.

IT IS ORDERED, ADJUDGED AND DECREED that the plaintiff's motion for summary judgment is granted and that Denais be awarded appropriate benefits consistent with an onset date of December 9, 1988, the date Dr. Marler diagnosed sarcoidosis and concluded that Denais was disabled due to pulmonary insufficiency.

## REPORT AND RECOMMENDATION

METHVIN, United States Magistrate Judge.

This social security appeal was referred to me for the purpose of review, report and

recommendation pursuant to this court's standing order of December 9, 1991.

## BACKGROUND

Gloria Denais was born on June 16, 1937, has a tenth grade education, and has worked in the past as a cashier and restaurant manager (Tr. 285; 66; 174). On October 21, 1987, Denais applied for supplemental security income and on November 4, 1987, she applied for disability insurance benefits alleging disability since October 23, 1987 due to lung disease (Tr. 126–135; 122–125).

An administrative hearing was held on July 28, 1988 and on November 28, 1988, an administrative law judge (ALJ) issued an opinion denying benefits (Tr. 44–60; 278–284). Denais did not appeal.

On January 25, 1989, Denais filed her current application for disability insurance benefits claiming disability since October 23, 1987 (Tr. 285–287). An administrative hearing was held on December 28, 1989 (Tr. 61–93). Following the hearing, the ALJ submitted written interrogatories to a vocational expert. Denais' attorney requested the opportunity to cross-examine the vocational expert. On July 19, 1990, a supplemental hearing was held and on September 28, 1990, the ALJ issued an opinion denying benefits (Tr. 94–119; 17–23). On July 17, 1991, the Appeals Council denied Denais' request for review making the findings of the ALJ the final decision of the Secretary from which Denais appeals (Tr. 5–6).

The ALJ found as follows: the medical evidence establishes that Denais has severe sarcoidosis and hypertension, but she does not have an Appendix 1 impairment; Denais' subjective complaints of pain and other occupational impediments of such severity as to limit Denais' work ability to only sedentary work are medically supported and considered credible; Denais has the residual functional capacity to perform the physical exertion requirements of work except for working at heights and around moving machinery, chemicals, dust and fumes; Denais is unable to perform her past relevant work; Denais' residual functional capacity for the full range of sedentary work is reduced by the aforementioned environmental restrictions; if Denais had the capacity to perform the full range of sedentary work, then Table No. 1 of Appendix 2 would direct a conclusion that Denais is not disabled; if Denais' ability to perform the full range of sedentary work was significantly compromised, then § 201.00(h) of Appendix 2 indicates that a finding of disabled would be appropriate; although Denais' exertional limitations do not allow her to perform the full range of sedentary work, using the Medical–Vocational Guidelines as a framework for decision making, there are a significant number of jobs in the national economy and in the region in which Denais lives which Denais can perform, such as food checker, food tabulator, medical voucher clerk, appointment clerk, circulation clerk, and telephone answering service worker; Denais therefore is not disabled within the meaning of the Social Security Act (Tr. 21–23).

## ISSUES PRESENTED

Whether there is substantial evidence to uphold the finding that Denais is not disabled.

## STANDARD OF REVIEW

This court's review "is limited to a determination that the Secretary's decision was supported by substantial evidence existing in the record as a whole and that no errors of law were made." *Neal v. Bowen,* 829 F.2d 528, 530 (5th Cir.1987); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

> * * * However, we may not reweigh the evidence in the record, nor try the issues *de novo,* nor substitute our judgment for that of the Secretary, even if the evidence preponderates against the Secretary's decision ...

*Johnson v. Bowen,* 864 F.2d 340, 343 (5th Cir.1988). *See also Fields v: Bowen,* 805 F.2d 1168, 1169 (5th Cir.1986); *Neal, supra,* 829 F.2d 528 at 530. Substantial evidence is more than a scintilla, but less than a preponderance, and is:

> ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. · It must do more than create a suspicion· of the existence of

the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983) (citations omitted).

## FINDINGS AND CONCLUSIONS

### 1. Res Judicata

The last denial of Denais' applications before the current application was on November 28, 1988 (Tr. 278–284). Denais contends that her previous applications should be reopened.

■■■ The ALJ in this case considered evidence only pertaining to Denais' current application. Generally, the ALJ's decision not to reopen the prior determination is not reviewable by the courts. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Federal courts do, however, have subject matter jurisdiction over a petition to reopen a previous application if a colorable constitutional claim is asserted. *Id.,* 430 U.S. at 109, 97 S.Ct. at 986. Denais raises no such claim. Therefore, the previous decision denying disability is *res judicata* and Denais is not eligible for benefits prior to November 28, 1988.

### 2. Medical Records

On December 9, 1988, Dr. Philip Marler, an internal medicine specialist, reported that Denais had a "definite diagnosis of Sarcoidosis" (Tr. 352).[1] He concluded that Denais was disabled due to pulmonary insufficiency. *Id.*

On January 24, 1989, Denais complained of headaches and low back pain. Dr. Marler stated that test results were negative. Denais also complained of dyspnea which, according to Dr. Marler, is the main symptom of sarcoidosis. Denais could only walk 50 feet before needing to rest. She had no difficulty sitting and standing for prolonged periods. Denais could not lift or carry objects over 20 pounds (Tr. 351).

In a written statement dated March 16, 1989, Cecile Lejeune stated that Denais had been an employee of his for several years. Her duties included working the cash register, stacking shelves and some cooking. Denais was a good employee, but by May 1987 Lejeune had to hire someone to help Denais in her duties because of Denais' physical problems. From the latter date until October 1987 when she quit working, Denais was only able to perform one-third of her duties.

On December 11, 1989, Dr. D.F. Gremillion, an internal medicine specialist, examined Denais at the request of the Social Security Administration. Denais measured 5' 2½" and weighed 145 pounds. She walked at a normal pace with a normal gait. She had no difficulty getting in and out of her chair. Her blood pressure was 104/64. Denais' examination was essentially within normal limits. Dr. Gremillion concluded that Denais could occasionally lift 15 pounds and frequently lift 5 pounds. She could stand or walk intermittently 3 hours and could stand or walk constantly for one-half of an hour. Her sitting abilities were not impaired. Denais could never climb and could occasionally balance, stoop, crouch, kneel or crawl. Her pushing and pulling abilities were affected by her impairments. Denais was unable to work at heights, in temperature extremes and around moving machinery, ducts, fumes, humidity or chemicals (Tr. 418–421).

On January 16, 1990, Dr. Marler concluded that Denais could lift and carry 10 pounds. Denais could intermittently stand or walk 4 hours in an 8-hour workday and constantly stand or walk for 30 minutes. Her sitting abilities were not impaired. She could frequently kneel or crawl, occasionally balance, stoop or crouch, but never climb. Denais' pushing and pulling abilities were affected by her impairments. Denais could not work at heights or around moving machinery, chemicals, dust and fumes. Dr. Marler concluded that Denais was disabled due to shortness of breath and dyspnea on exertion (Tr. 429–433).

On April 23, 1990, Dianna L. Herbst, a vocational expert, answered interrogatories

---

**1.** "Sarcoidosis" is defined as a systemic granulomatous disease of unknown cause, especially involving the lungs with resulting fibrosis. *Stedman's Medical Dictionary,* 5th Edition 1982.

submitted by the ALJ. Herbst stated that Denais had acquired transferrable skills from her past work, including counting merchandise, supervising employees, scheduling work activities, meeting the needs of customers, pricing merchandise, collecting payment, and ordering and preparing food. Herbst noted that Denais' past work reflected high average development in the areas of reasoning, math and language. Assuming that Denais could perform sedentary work and considering her age, education and work experience, Herbst concluded that Denais could perform jobs as a food checker, food tabulator, medical voucher clerk, appointment clerk, circulation clerk and telephone answering service worker (Tr. 449–452).

On July 18, 1990, Dr. Marler stated that he had treated Denais on January 25 and April 24, 1990 for chronic symptoms of shortness of breath with even minimal physical exertion. Dr. Marler had prescribed two bronchodilators. Denais' blood pressure was 144/86 on January 25 and 144/90 on April 24. Dr. Marler had prescribed Capoten to control Denais' hypertension. Dr. Marler reported:

> This lady continues to suffer from Sarcoidosis. She has permanent pulmonary damage which makes her short of breath with the least exertion. I do not anticipate her condition to improve even assuming she is in a permanent remission from this illness. She still can not walk more than 50 feet without stopping to rest. She sits down for roughly two to three minutes and then she is able to continue ambulation for another 50 or so feet before having to rest again. She can maintain about ⅔ of the normal speed of ambulation and she bases this estimate on what other people are doing around her. She can not lift objects weighing over 20 pounds without becoming dyspneic. She will become short of breath prior to 50 feet of ambulation if she attempts to carry any object.

(Tr. 479).

On March 28, 1991, John W. Grimes, a rehabilitation and vocational consultant, evaluated Denais at her attorney's request. Dr. Grimes concluded that Denais could not return to her previous work which he classified as medium work. Using Denais' scores on the wide range achievement test, Dr. Grimes concluded that Denais' academic skills would preclude her from working as a medical voucher clerk and circulation clerk. He felt that she could also have difficulty working as an appointment clerk and that the telephone answering position could be too labor intensive. Dr. Grimes concluded that Dr. Herbst's conclusion that Denais could perform work as a food checker and food tabulator was correct. Dr. Grimes also concluded:

> * * * In terms of the section of availability of occupations, Dr. Herbst utilizes the census data. I do think these numbers which provide categorial (sic) job matching would generally be very inflated for numbers of availability for Mrs. Denais. However the previous categories of food checker and food tabulator would certainly exist in significant numbers. Because of these occupations are so that she will be dealing with the public she may be exposed to fumes and odors that are not in excess to the normal average person but may be so true for Mrs. Denais' ability to tolerate (sic). A final point may be considered in terms of my observation. I do believe that she gave full and maximum effort regarding testing. However it should be noted that she was visibly short of breath and very restricted in her activities. To what extent she can maintain employment on a day in day out basis would have to be addressed by the physicians. But I certainly, from my observations, would suggest this lady has some significant limitations.

(Tr. 482).

### 3. Claimant's Testimony

At the administrative hearing, Denais testified that she had experienced swelling and upset stomach after taking her steroid medication. She suffered from severe shortness of breath due to her lung disease. Denais could not complete any task without stopping to rest and regain control of her breathing. Her lung disease caused her to experience pain in her neck, back and joints. She took muscle relaxants to help relieve the stiffness.

She also experienced headaches. Denais was very sensitive to temperature changes (Tr. 65–89).

James Cormier testified on behalf of his sister. He stated that he was living with Denais at the time she had quit working. He stated that he could verify her testimony (Tr. 89–90).

### 4. Appendix 1 Impairment

Denais argues that test results dated June 10, 1988 show that she suffered with an Appendix 1 impairment under Listing 3.02(C)-(2). However, as previously stated, the ALJ in this case chose not to reopen Denais' previous applications, and she is not eligible for benefits prior to November 28, 1988.

### 5. Analysis

■ A person applying for disability or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act, 43 U.S.C. § 423(d). Initially, the burden is on the claimant to show that he cannot perform his previous work. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir.1987); *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir.1987); *Fields v. Bowen*, 805 F.2d 1168, 1169 (5th Cir.1986). Once the claimant satisfies his initial burden, the Secretary then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is therefore not disabled. *Neal*, 829 F.2d at 530. In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f) (1988):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Secretary's analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 n. 15 (5th Cir.1987); *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir.1984).

In this case, the ALJ reached the fifth step of the sequential inquiry. Relying on the vocational expert's conclusion, the ALJ found that Denais could perform jobs which exist in significant numbers in the national economy and in the region in which Denais lives. Denais argues that the vocational expert did not provide sufficient data to show that the jobs listed existed in significant numbers.

Neither the claimant nor the Secretary cited Fifth Circuit case authority on the issue of what constitutes a significant number of jobs. Upon researching this issue, I was unable to find Fifth Circuit cases on point. Other circuits have, however, addressed this issue.

The Sixth, Eighth and Tenth Circuits have determined as follows:

A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

*Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988); *see also, Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir.1992) and *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.1988).

In *Hall,* the Sixth Circuit found that a vocational expert's testimony that there existed 1,350 to 1,800 jobs the claimant could perform in the local economy was sufficient to establish the existence of a significant number of jobs. In *Trimiar,* the vocational expert testified that the claimant could perform work as an escort driver, recreational facility attendant and telephone solicitor. He stated that there were 900 such jobs in the claimant's home state. In *Jenkins,* the Eighth Circuit found that the existence of 500 jobs as a security guard constituted a significant number.

In this case, the vocational expert reported:

Employment statistics for three regions of the state of Louisiana based on the number reported employed in the census areas containing these job titles for the first quarter of 1990 were used in order to provide information about availability. The identified vocational alternatives fall with the census categories of Billing, Posting, and Calculating clerks; Communication Equipment Operators, NEC; Cost and Rate Clerks; Receptionists and Record Clerks. 42 reported employment in the first category; 30 within the second category; 122 within the third category; 629 within the fourth category; and 181 within the fifth category. If this statistical data is extrapolated to the state of Louisiana, this information would confirm the fact that these vocational alternatives are available in sufficient numbers so as to provide the opportunity for significant gainful employment activity within this region of the national economy. To further extrapolate this statistical information to reflect information relevant to the national economy, documentation would be determined so as to assert that these vocational alternatives are also available in significant numbers within the national economy so as to provide the opportunity for substantial gainful employment activity.

(Tr. 452).

Upon review of the record as a whole and the applicable law, I find that in the answers to the ALJ's interrogatories Herbst did cite a significant number of jobs that Denais could perform. However, I also find that Denais has rebutted the evidence presented by Herbst. At the administrative hearing, Denais' attorney cross-examined Herbst as to whether the number of jobs she cited would be precluded or reduced as a result of the environmental limitations and limitations on walking more than 50 feet placed on Denais by her treating physician. Herbst stated that she was unable to answer that question. She then stated that there could be a reduction of the jobs available based on the walking requirements of a particular job although she could not provide a precise figure (Tr. 114–117). Furthermore, Grimes concluded that Denais' academic skills would preclude her from working as a medical voucher clerk and circulation clerk. He felt that she could also have difficulty working as an appointment clerk. He concluded that the telephone answering position could be too labor-intensive. Grimes further concluded that although the jobs of food checker and food tabulator would exist in significant numbers, Denais could probably not perform these jobs due to exposure to fumes and odors.

The Fifth Circuit has held:

[A] claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which real people work in the real world.

*Martin v. Heckler,* 748 F.2d 1027, 1035 n. 5 (5th Cir.1984), citing *Allred v. Heckler,* 729 F.2d 529, 533 (8th Cir.1984).

Also, the Fifth Circuit has stated that:

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.

*Singletary v. Bowen,* 798 F.2d 818 (5th Cir. 1986); *see also Leidler v. Sullivan,* 885 F.2d 291 (5th Cir.1989).

Based on the foregoing, I find that Denais' physical impairments preclude her from hav-

ing the ability to perform substantial gainful activity "day in and day out" in a realistic employment setting. *Martin, supra.* Accordingly, it is my recommendation that the plaintiff's motion for summary judgment be granted and that Denais be awarded appropriate benefits consistent with an onset date of December 9, 1988, the date Dr. Marler diagnosed sarcoidosis and concluded that Denais was disabled due to pulmonary insufficiency.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the District Judge prior to a final ruling. FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATION CONTAINED IN THIS REPORT WITHIN TEN (10) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.

Lafayette, Louisiana, this 5th day of March, 1993.