[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 28, 2010
JOHN LEY
CLERK

No. 09-16518
Non-Argument Calendar

_____

D. C. Docket No. 09-20152-CV-RLV

ADRIENNE F. D'ANDREA,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,
Michael J. Astrue,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 28, 2010)

Before TJOFLAT, BARKETT and HULL, Circuit Judges.

PER CURIAM:

This case involves an application for disability insurance benefits filed by Adrienne F. D'Andrea on November 20, 2004, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* She claimed that her disability began on January 1, 1998 due to chronic fatigue syndrome ("CFS") and other conditions we set out in the margin.[1] An administrative law judge ("ALJ") held a hearing on November 9, 2007, and found that D'Andrea was not disabled (prior to the expiration of her insured status on June 30, 2005), and that her impairments caused no more than minimal limitations on her ability to work and thus were not severe. The ALJ found alternatively that even if her impairments were severe, she retained the residual functional capacity ("RFC") to perform her past relevant work.

The Appeals Council denied D'Andrea's request for review on October 30, 2008, thereby making the ALJ's decision the final decision of the Commissioner. D'Andrea thereafter brought this action in the district court, seeking review of the Commissioner's decision. The court affirmed the decision, and D'Andrea lodged this appeal.

D'Andrea argues that substantial evidence does not support the ALJ's finding that her CFS is not severe or his alternative finding that she retains the RFC

---

[1] D'Andrea alleged that she also suffered from debilitating exhaustion, nausea, dizziness affecting balance, hot sweats, cognitive and memory dysfunction, poor concentration, gastrointestinal problems, chest pain, chronic infections, sleep problems, and systematic candidiasis.

to perform her past relevant work. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation omitted). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation and alteration omitted). "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The Social Security Regulations outline a five-step process used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). Next, the claimant must show that she has a severe impairment. *Id.* § 404.1520(a)(4)(ii). She then must attempt to show that the impairment meets or equals the criteria contained in one of the Listings of Impairments. *Id.* § 404.1520(a)(4)(iii). If the claimant cannot meet or equal the criteria, she must show that she has an impairment which prevents her from performing her past relevant work. *Id.* § 404.1520(a)(4)(iv). Once a claimant establishes that she cannot perform her past relevant work due to some severe

3

impairment, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy which the claimant can perform. *Id.* § 404.1520(a)(4)(v); *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

The present inquiry concerns the second step of the sequential evaluation process—whether substantial evidence supports the ALJ's finding that D'Andrea's CFS was not a severe impairment. "The severity of a medically ascertained disability must be measured in terms of its effect upon ability to work." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (quotation omitted).

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031-32 (11th Cir. 1986); *see Phillips*, 357 F.3d at 1237 (stating that an impairment is severe if it "significantly limits" the claimant's physical or mental ability to perform basic work activities); 20 C.F.R. § 404.1521(a) (stating that an impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities").

### A. Chronic Fatigue Syndrome

Social Security Ruling 99-2p ("SSR 99-2p") confirms that a disability claim

involving CFS is evaluated "using the sequential evaluation process, just as for any other impairment." SSR 99-2p at 4. According to SSR 99-2p, CFS is "a systemic disorder consisting of a complex of symptoms that may vary in incidence, duration, and severity . . . characterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities." *Id.* at 1. Symptoms of CFS include "[s]ore throat; [t]ender cervical or axillary lymph nodes; [m]uscle pain; [m]ulti-joint pain without joint swelling or redness; [h]eadaches of a new type, pattern, or severity; [u]nrefreshing sleep; and [p]ostexertional malaise lasting more than 24 hours." *Id.* at 2. A person with CFS might also exhibit "muscle weakness, swollen underarm (axillary) glands, sleep disturbances, visual difficulties (trouble focusing or severe photosensitivity), orthostatic intolerance (e.g., lightheadedness or increased fatigue with prolonged standing), other neurocognitive problems (e.g., difficulty comprehending and processing information), fainting, dizziness, and mental problems (e.g., depression, irritability, anxiety)."

When accompanied by appropriate medical signs or laboratory findings, CFS can be a medically determinable impairment. *Id.* at 2. There must be

> an impairment result[ing] from anatomical, physiological, or psychological abnormalities that can be shown by medically

5

acceptable clinical and laboratory diagnostic techniques. The Social Security Administration and regulations further require that an impairment be established by medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms.

*Id.* Recognized examples of medical signs, clinically documented over a period of at least six consecutive months, that will establish the existence of a medically determinable impairment in a CFS case include "[p]alpably swollen or tender lymph nodes on physical examination; [n]onexudative pharyngitis; [p]ersistent, reproducible muscle tenderness on repeated examinations . . .; or, [a]ny other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record." *Id.* at 3. Further, CFS may be established by: (1) laboratory findings including neurally mediated hypotension or an abnormal exercise stress test; and (2) mental findings, including problems with short-term memory, information processing, visual-spatial issues, comprehension, concentration, speech, word-finding, calculation, and anxiety or depression. *Id.* Citing Ruling 99-2p, we have recognized that "there are no specific laboratory findings that are" widely accepted as indicative of CFS and no test for CFS. *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219-20 (11th Cir. 2001) (holding that the ALJ failed to analyze the effect of CFS on a claimant's ability to do work meaningfully when he rejected CFS as a diagnosis for want of a

definite test or specific laboratory findings to support the diagnosis).

B.     *Medical Opinions*

Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless "good cause" is shown.  *See* 20 C.F.R. § 404.1527(d)(1), (2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists to discredit a physician's testimony when it is contrary to or unsupported by the evidence of record, or it is inconsistent with the physician's own medical records.  *Phillips*, 357 F.3d at 1240-41; *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (concluding that good cause existed not to rely on a treating physician's findings when, *inter alia*, his treatment notes contained unexplained inconsistencies).  The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985).

Further, when a treating physician makes merely conclusory statements, the ALJ may afford them such weight as is supported by the clinical or laboratory findings and other consistent evidence of the claimant's impairments.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see Vega*, 265 F.3d at 1220 (holding that the ALJ erred in failing to give the findings and assessments of the treating physicians any weight when the medical evidence and claimant's

7

testimony supported a diagnosis of CFS).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical evidence based on many factors, including the examining relationship, the treatment relationship and the frequency of examination, whether an opinion is amply supported, whether an opinion is consistent with the record, and a doctor's specialization.  20 C.F.R. § 404.1527(d).  Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error.  *Moore*, 405 F.3d at 1212-13.  Here, the ALJ did not accord the treating physician's opinion controlling weight, and D'Andrea challenges his decision.

### C.    Subjective Symptoms

When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, we apply a three-part "pain standard," which requires (1) evidence of an underlying medical condition, and either (A) objective medical evidence that confirms the severity of the alleged pain stemming from that condition, or (B) that the objectively determined medical condition is so severe that it can reasonably be expected to cause the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see Holt v. Sullivan*,

921 F.2d 1221, 1223 (11th Cir. 1991) (stating that this "standard also applies to complaints of subjective conditions other than pain"). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.*

"After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). The ALJ must explicitly and adequately articulate his reasons if he discredits subjective testimony. *Id.* "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Charter*, 67 F.3d 1553, 1562 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination "cannot merely be a broad rejection which is not enough to enable . . . this Court to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1210-11(quotations and alterations omitted).

Moreover, the ALJ may not reject a plaintiff's subjective complaints based on the lack of objective evidence alone. *Watson v. Heckler*, 738 F.2d 1169, 1172-73 (11th Cir. 1984). The ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms;

(3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and (6) other factors concerning functional limitations.  *See* 20 C.F.R. § 404.1529(c)(3).

After reviewing the record in this case, we conclude that substantial evidence supports the ALJ's finding that D'Andrea's CFS was not a severe impairment.  In reaching this conclusion, have considered D'Andrea's argument that the ALJ erred in failing to accord appropriate weight to the opinion of her treating physician; we reject the argument because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it.  We also conclude that the ALJ had ample reason for rejecting the consulting physician's RFC assessment; the physician's own clinical findings undermined the assessment. The ALJ discounted D'Andrea's subjective complaints on credibility grounds, and those grounds are well supported by the evidence.  Finally, although the ALJ misconstrued the psychologists' findings, the misconstruction was harmless, as the psychologists' findings do not contradict the ALJ's conclusion that D'Andrea did not have a severe impairment.

In sum, because we conclude that substantial evidence supports the determination that D'Andrea's CFS was not a severe impairment and that she had a RFC to perform her past relevant work, the district court properly refused to

disturb the Commissioner's decision and its judgment is due to be affirmed.

AFFIRMED.