[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 15-11860
Non-Argument Calendar

————————————————

D.C. Docket No. 0:13-cv-61840-RNS

LEOMARES TAVAREZ,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(January 7, 2016)

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Leomares Tavarez appeals the district court's order affirming the decision of

the Commissioner of the Social Security Administration ("Commissioner") to deny

her applications for disability insurance benefits and supplemental security income

(collectively, "disability benefits"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). First, Tavarez argues that the administrative law judge ("ALJ") did not use the proper standards when reviewing the medical opinions from her treating physicians and an examining physician and that substantial evidence does not support the ALJ's evaluation of those opinions. Second, she contends that the ALJ did not use the proper standards to assess the credibility of her testimony and that substantial evidence does not support the ALJ's determination that her testimony was only partially credible. Finally, she asserts that the ALJ's determination of her residual functional capacity ("RFC") is not supported by substantial evidence. After careful review, we vacate the district court's order and remand with instructions to remand the matter to the Commissioner for further proceedings.

## I.

In December 2010, Tavarez filed for disability benefits with the Commissioner, alleging that she was disabled as a result of rheumatoid arthritis. The Commissioner denied Taverez's applications initially and upon reconsideration. Tavarez then requested a hearing before an ALJ, which was held in May 2012.

At the hearing, Tavarez amended her applications to state that her disability onset date was December 31, 2008, when she was terminated from her position

making reservations for a cruise line.[1] She reported that she was fired because she was unable to type quickly enough. Tavarez was 57 years old at the time of the hearing. She attended two years of college but did not receive a degree. Her past relevant work was as a gate agent, a reservations agent, and a ticket agent.

The evidence before the ALJ consisted of the following: live testimony from Tavarez and a vocational expert; medical reports and notes from Tavarez's treating physicians, Dr. Elias Halpert and Dr. Osvaldo Torres; medical reports and notes from an examining physician, Dr. Alvin Stein, and from the Commission's consulting physician, Dr. Luis Cortes; and an RFC assessment completed by Dr. Nicolas Bancks, a state agency physician.

According to Tavarez's hearing testimony, Tavarez's rheumatoid arthritis affected her fingers, wrists, ankles, knees, and shoulders. She had difficulty typing, cooking, bathing, dressing herself, and performing other household chores. Her fingers swelled with use. She was unable to sit or stand for longer than two hours in an eight-hour workday and had trouble standing or sitting for more than fifteen minutes at a time. She often had to elevate her legs. She could lift three-to-four pounds. Tavarez attested that she had fallen several times due to lack of balance. She took medication for her arthritis, and she wore braces on her wrists to prevent movement and pain.

---

[1] Tavarez initially had alleged a disability onset date of January 1, 1995.

Dr. Halpert, a rheumatologist, completed an arthritis impairment questionnaire for Tavarez in March 2011. Dr. Halpert had treated Tavarez for arthritis since February 2005. According to Dr. Halpert, Tavarez suffered from chronic rheumatoid arthritis with limited range of motion in her wrists, joint tenderness in her shoulders and wrists, joint swelling in her hands and ankles, and reduced grip strength in both hands. Dr. Halpert stated that Tavarez could initiate but not sustain or complete fine and gross movements with her hands. He opined that, over an eight-hour workday, Tavarez had marked limitations in her abilities to grasp, manipulate, or reach for objects with either hand. Further, Dr. Halpert opined that Tavarez could sit for two hours in an eight-hour workday and stand or walk for one hour in an eight-hour workday; she needed to move around for a five-minute period every thirty minutes; she could occasionally lift and carry up to five pounds; she could not push, pull, kneel, bend, or stoop; and she likely would miss two to three workdays per month. Dr. Halpert also stated that Tavarez's pain and fatigue would frequently interfere with her attention and concentration.

Dr. Torres, an internist, had treated Tavarez since 2006. Dr. Torres completed a multiple impairment questionnaire for Tavarez in April 2011. Dr. Torres's evaluation was largely consistent with Dr. Halpert's. According to Dr. Torres, Tavarez suffered from chronic rheumatoid arthritis, which caused severe and incapacitating pain, decreased range of motion in her joints, and joint swelling.

4

Dr. Torres estimated that Tavarez could sit for less than an hour and stand or walk for less than an hour in an eight-hour workday, that she would need to get up every thirty minutes to move around, and that Tavarez occasionally could lift and carry up to five pounds. Dr. Torres opined that Tavarez had marked limitations in grasping objects, performing fine manipulations, and reaching with either hand. These symptoms, Dr. Torres stated, would likely worsen in a competitive work environment. Her pain and fatigue also interfered with her attention and concentration. Like Dr. Halpert, Dr. Torres stated that Tavarez would have good days and bad days, and she likely would miss more than three workdays a month.

Dr. Stein, an orthopedic surgeon, evaluated Tavarez on April 26, 2012. Dr. Stein completed a lumbar spine impairment questionnaire. He stated that Tavarez could not sit continuously, stand continuously, or walk continuously in a work environment, that she could occasionally lift and carry up to 10 pounds, that her pain and other symptoms constantly interfered with her attention and concentration, that she would need to take unscheduled breaks, and that she was likely to miss more than three workdays a month. Dr. Stein concluded that Tavarez was totally disabled.

Dr. Cortes evaluated Tavarez at the request of the Commissioner in January 2011. Dr. Cortes did "not find any significant limitations in the areas of sitting, walking, lifting, carrying, seeing, hearing[,] and speaking." Dr. Cortes did find

5

that Tavarez suffered from "mild tenderness" in her wrists, hands, and shoulders as a result of her rheumatoid arthritis but concluded that this tenderness caused no functional limitations.

Dr. Bancks, a state agency physician, reviewed the medical evidence in the record and completed an RFC assessment in May 2011. Dr. Bancks opined that Tavarez could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds and that she could stand or walk and sit for about six hours in an eight-hour workday. Dr. Bancks noted that Tavarez lacked a significant longitudinal record to support her medical claims. Dr. Bancks stated that Tavarez had no limitations in her abilities to handle, finger, or feel with her hands, but she had a limited ability to reach overhead because of her shoulder pain. Overall, Dr. Bancks found that Tavarez's alleged degree of impairment was not supported by the medical evidence in the record.

In response to questioning from the ALJ, a vocational expert testified about two hypothetical claimants with the limitations indicated by Dr. Halpert, on the one hand, and Dr. Bancks, on the other. According to the vocational expert, Dr. Bancks's hypothetical claimant, who could occasionally lift twenty pounds, frequently lift ten points, stand or walk and sit for about six hours in an eight-hour day with unlimited manipulative limitations (other than reaching), could perform all of Tavarez's past relevant work. By contrast, Tavarez would be unable to

6

perform work in the national economy if she could sit for only two hours and stand for one hour in an eight-hour workday, if she was off-task for ten to fifteen minutes per hour, if she had to elevate her legs above her body, or if she would be expected to miss two to three days of work per month. The vocational expert also testified that Tavarez had skills that would be transferrable to customer service, sales, and record-keeping jobs.

In June 2012, the ALJ issued a decision concluding that Tavarez was not disabled within the meaning of the Social Security Act from December 31, 2008, to the date of the decision. The ALJ found that Tavarez was unemployed, that her rheumatoid arthritis was a severe impairment, that the impairment failed to meet a listing in the Listing of Impairments, and that she had the RFC to perform past relevant work. According to the ALJ, Tavarez had the RFC to (1) work at a light exertional level, (2) occasionally balance and stoop, (3) frequently climb, kneel, crouch, and crawl, (4) frequently reach overhead, and (5) handle, finger, and feel objects without limitation. The ALJ concluded that the medical evidence demonstrated that Tavarez had symptomatic rheumatoid arthritis that resulted in joint swelling but did not affect her range of motion.

In making his RFC assessment, the ALJ only partially credited Tavarez's testimony about the severity of her symptoms. In particular, the ALJ found Tavarez's testimony confusing and inconsistent with the medical evidence,

7

particularly Dr. Cortes's assessment finding only mild limitations. The ALJ also discounted Tavarez's credibility because Tavarez received unemployment benefits until 2011, which implied that she was "ready, willing, and able to work."

The ALJ also gave little weight to the medical opinions of Drs. Halpert, Torres, and Stein. Instead, the ALJ stated that Dr. Halpert's medical opinion was not supported by his own treatment notes or the record as a whole, finding his opinion inconsistent with Tavarez's statements that her symptoms fluctuated and with Dr. Cortes's consultative examination, which found only mild limitations. The ALJ also gave little weight to Dr. Torres's medical opinion because it did not correlate with his progress notes, pointing out that Dr. Torres's final treatment note from January 2011 did not report any problems associated with Tavarez's arthritis. Finally, the ALJ gave little weight to Dr. Stein's medical opinion because he was retained by Tavarez's attorney and his opinion was based mainly on Tavarez's subjective complaints.

Tavarez requested review of the ALJ's decision from the Appeals Council, which denied her request. Tavarez then sought judicial review in federal court. Over Tavarez's objections, the district court adopted a magistrate judge's recommendation and affirmed the ALJ's decision. Tavarez now appeals.

## II.

In Social Security appeals, we review whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). We review the decision of an ALJ as the Commissioner's final decision when, as here, the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (internal quotation marks omitted). Our deferential review precludes us from deciding the facts anew, making credibility determinations, or re-weighing the evidence. *Id.* Consequently, we must affirm the agency's findings, including credibility determinations, if they are supported by substantial evidence, even if the evidence preponderates against them. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Nevertheless, "we do not act as automatons," and, instead, "[w]e must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must state with at least some measure of clarity the grounds for the decision, and we will not affirm "simply because some

9

rationale might have supported the ALJ's conclusions." *Winschel*, 631 F.3d at 1179.

**III.**

**A.**

Tavarez first challenges the ALJ's treatment of medical opinions. She contends that the ALJ erroneously failed to give controlling weight to the medical opinions of her treating physicians, Drs. Halpert and Torres. Tavarez also asserts that the ALJ did not give an adequate reason for assigning little weight to the opinion of Dr. Stein.

Medical opinions are statements from physicians and other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment. *Winschel*, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). In evaluating medical opinions, the ALJ must clearly articulate the weight given to different medical opinions and the reasons for doing assigning that weight. *Id.* at 1179.

A treating physician's opinion generally is entitled to "substantial or considerable weight." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). That is so because treating sources are likely in a better position "to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique

10

perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) ("It is not only legally relevant but unquestionably logical that the opinions, diagnosis, and medical evidence of a treating physician whose familiarity with the patient's injuries, course of treatment, and responses over a considerable length of time, should be given considerable weight." (alteration and brackets omitted; quotation marks omitted)).

Nevertheless, an ALJ may give a treating physician's opinion less weight when "good cause" exists to do so. *Winschel*, 631 F.3d at 1179. We have found "good cause" "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* Still, though, the ALJ must clearly articulate the grounds for the decision to discredit medical opinion evidence, and we will not affirm "simply because some rationale might have supported the ALJ's conclusion." *Id.*

There is no dispute that Tavarez suffers from rheumatoid arthritis. On that, all the medical opinions agree. Instead, at issue is the severity of Tavarez's arthritis and the resulting limitations on her ability to work, about which Drs.

11

Halpert, Torres, and Stein present significantly different impressions from Drs. Cortes and Bancks.

We start with the evaluation of Dr. Stein, whose opinion is not entitled to controlling weight because he is not a treating physician. The ALJ gave two reasons for giving Dr. Stein's opinion little weight: (1) he was retained by Tavarez's attorney; and (2) "his opinion was primarily based on the claimant's subjective complaints." We find both reasons insufficient.

As to the first reason, "the mere fact that a medical report is provided at the request of counsel or, more broadly, the purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *see Moss v. Astrue*, 555 F.3d 556 (7th Cir. 2009). Of course, other aspects of a medical opinion and how it was obtained may form a legitimate basis for discounting its reliability. *See, e.g.*, *Reddick*, 157 F.3d at 726 (noting that "a doctor's opinion in a letter requested by counsel" may be rejected "where the opinion was unsupported by medical findings, personal observations, or test reports"); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that one-time examinations generally are not entitled to deference). To the extent the ALJ discounted Dr. Stein's assessment because it was based on a single examination, however, that conclusion applies with equal force to Dr. Cortes's evaluation. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)

12

(finding no good cause in part where the ALJ's reason for discounting a treating physician's opinion "applie[d] with equal force" to the opinions of the consulting physicians, which the ALJ credited). That reasoning, in turn, would bolster the credibility of the opinions from Tavarez's long-term treating physicians, Drs. Halpert and Torres. *See id.* at 1440-41.

As to the second reason, we find no record support for the ALJ's statement that Dr. Stein's opinion was primarily based on Tavarez's subjective complaints. In fact, the ALJ noted earlier in the decision that Dr. Stein diagnosed Tavarez with rheumatoid arthritis "based on her medical records and by clinical examination." Dr. Stein's clinical examination showed restricted motion in the neck with accompanying spasm on movement, severely guarded upper extremity movement accompanied by pain and tenderness, and marked restriction of motion in the hips and knees along with painful weakness. Dr. Stein also noted that Tavarez had difficulty mounting the examination table because she was unable to use her arms for balance. In sum, although Dr. Stein was not a treating physician, the ALJ did not express a legitimate reason supported by the record for giving his assessment little weight. *See Winschel*, 631 F.3d at 1179.

We also cannot conclude that the ALJ's reasons for discounting the medical opinions of Tavarez's treating physicians are supported by "good cause." The ALJ found that Dr. Halpert's medical opinion was not supported by his treatment notes

13

or the record as a whole.  In support of that conclusion, the ALJ gave specific two reasons: (1) Dr. Halpert's opinion was inconsistent with Tavarez's testimony that her symptoms fluctuated; and (2) the results of the consultative examination "call[ed] Dr. Halpert's statements into question" because the consulting physician found only mild limitations with regard to Tavarez's ability to use her hands.

Regarding the first reason, Dr. Halpert's opinion reflects that his assessment was made with the understanding that Tavarez's symptoms did fluctuate.  For example, as part of the arthritis impairment questionnaire, Dr. Halpert stated that Tavarez's impairments were likely to produce "good days" and "bad days," and that she would likely miss two to three days of work per month due to her impairments.  The ALJ did not elaborate on what he found to be inconsistent. Without more, we cannot conclude that this reason provides good cause to discount Dr. Halpert's assessment.

In addition, the ALJ's reliance on Tavarez's fluctuating symptoms to discount Dr. Halpert's assessment applies with equal force to Dr. Cortes's examination. *Lewis*, 125 F.3d at 1440.  In other words, that Tavarez's symptoms fluctuated could be consistent both with Dr. Cortes's mild findings and with Dr. Halpert's more severe findings.  The ALJ did not make any findings as to the range of fluctuation Tavarez experiences.  Moreover, fluctuating symptoms, producing both good and bad days, do not preclude a finding of disability.  The ALJ must

14

determine a claimant's ability to work "on a regular and continuing basis," S.S.R. 96–8p at 2, 1996 WL 374184, and, as the vocational expert's testimony reflected, Tavarez could not sustain employment if she had two to three absences per month.

As for the second reason, the ALJ's assessment that Dr. Halpert's opinion was inconsistent with the medical records, particularly Dr. Cortes's evaluation, appears to be based, at least in part, on an inaccurate and incomplete understanding of the medical evidence. It is inaccurate because the ALJ omitted from discussions of the medical evidence the fact that Tavarez was found to have limited range of motion in her wrists. For example, treatment notes from Dr. Halpert reflect that Tavarez had decreased range of motion in her wrists with swelling and tenderness in August 2009, and decreased range of motion in her left wrist with swelling and tenderness in November 2009. In light of these treatment notes, several of the ALJ's statements do not accurately reflect the record. *See, e.g.*, ALJ Decision at 5-7 ("in August 2009, . . . she had ***full range of motion of her joints*** with some swelling"; "the mild tenderness in the wrist, hand, and shoulder joint ***with full range of motion*** was consistently noted by Dr. Halpert"; "while the claimant has been diagnosed with rheumatoid arthritis that is symptomatic in that she has some joint swelling in limited areas, ***she has full range of motion***") (emphases added).

The ALJ's assessment of the medical evidence as a whole also appears to be incomplete in that it largely ignores the clinical findings from Dr. Stein. Dr.

15

Stein's examination found that Tavarez had limited range of motion in several joints, among other findings. The ALJ did summarize Dr. Stein's clinical findings, but the remainder of the decision does not discuss them or resolve the inconsistencies between these findings and those from Dr. Cortes's examination.[2] So, for example, while Dr. Halpert's opinion is contradicted by Dr. Cortes's findings, it is supported by Dr. Stein's findings. Without some further explanation by the ALJ of why Dr. Cortes's findings are more reflective of the medical evidence as a whole, and Dr. Stein's less so, we are left wondering whether the ALJ considered the medical evidence as a whole.[3] *See Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982) ("[T]his court, like the ALJ, must consider the evidence as a whole . . . ."); *see also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). The ALJ did note that Dr. Cortes's findings were largely consistent with Dr. Halpert's treatment notes, but, as explained above, we find the ALJ's description of Dr. Halpert's treatment notes inaccurate.

Finally, the reason given for assigning little weight to Dr. Torres's assessment does not amount to "good cause." The ALJ gave little weight to Dr.

---

[2] This is perhaps because the ALJ discounted Dr. Stein's assessment altogether. However, for the reasons stated above, we find the ALJ's reasons for doing so insufficient. In any case, the validity of Dr. Stein's medical opinion about Tavarez's ability to work does not necessarily affect the validity of his clinical findings based on a physical examination and review of medical records.

[3] We also would expect the ALJ to the give some additional explanation for why the one-time evaluation of Dr. Cortes, who has no apparent expertise with rheumatoid arthritis, is entitled to greater weight than the medical opinion of a long-term treating specialist.

Torres's assessment because it did not correlate with his progress notes, as his last treatment note in January 2011 "notes little problems associated with arthritis and no neurological deficits." However, the January 2011 treatment note cited by the ALJ reflects that Tavarez presented to Dr. Torres, her primary care physician, complaining of abdominal pain in the left side. It is therefore unsurprising that the treatment notes do not reflect any problems associated with Tavarez's wrists, hands, or shoulders.

Overall, we conclude that the ALJ's clearly articulated grounds for his decision to discredit Tavarez's medical opinion evidence are not supported by substantial evidence. *See Winschel*, 631 F.3d at 1179. To the extent that the Commissioner identifies other record evidence that supports the ALJ's decision, we do not know whether this evidence formed the basis of the ALJ's determinations, and we will not affirm "simply because some rationale might have supported the ALJ's conclusions." *See id.* at 1179.

**B.**

Tavarez also challenges whether the ALJ assessed her credibility using the correct standards, whether the ALJ's credibility determination was supported by substantial evidence, and whether the ALJ's RFC assessment was supported by substantial evidence. We decline to address these matters at this time because they

all depend, at least in part, on issues for which we have already decided remand is appropriate.

## IV.

Because the record does not contain substantial evidence to support the ALJ's decision to discredit Dr. Stein's medical opinion and evidence or to show "good cause" for the ALJ's decision to give little weight to the medical opinions of Tavarez's treating physicians, we **VACATE** the decision of the district court and **REMAND** with instructions to remand this case to the Commissioner for further proceedings regarding Tavarez's eligibility for disability benefits.[4]

---

[4] We express no opinion regarding Tavarez's eligibility for benefits on remand.