[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14487
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-00699-SCJ

DONNA F. DOUGLAS,

Plaintiff - Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 28, 2020)

Before LUCK, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Donna Douglas appeals the district court's order affirming the Commissioner's denial of her application for supplemental security income ("SSI"), pursuant to 42 U.S.C. § 405(g). Douglas argues that the administrative law judge's ("ALJ") determination that her residual functional capacity ("RFC") included the ability to handle and finger occasionally with her left hand was not supported by substantial evidence because the medical evidence in the record demonstrated that her left hand was not functional. In addition, she argues that the ALJ's determination that Douglas's hearing testimony regarding the subjective effects of her symptoms was not entirely credible was not supported by substantial evidence.

I.

We review *de novo* the legal principles upon which the ALJ's decision is based, but the ALJ's factual findings are conclusive if supported by substantial evidence. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018). We review *de novo* the district court's determination as to whether the ALJ's decision was supported by substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

2

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks omitted). We will deem the Commissioner's decision supported by substantial evidence even if the preponderance of the evidence weighs against it. *Id.* at 1158-59. However, we will not "affirm simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984). Moreover, an ALJ's decision is not supported by substantial evidence if she reached it by "focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (reversing the denial of an application for SSI where the ALJ ignored objective medical evidence regarding the applicant's physical condition and disregarded the vocational expert's testimony). We will not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). So long as the ALJ's decision demonstrates to the reviewing court that he considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

An ALJ determines what weight to give a physician's opinions based on (1) the examining relationship, (2) the treatment relationship, (3) the degree to

3

which the opinion is supported by medical evidence and the physician's explanations, (4) consistency with the record as a whole, and (5) any other factors that tend to support or contradict the medical opinion. 20 C.F.R. § 416.927(c). The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

An individual seeking SSI must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In order to determine whether a claimant is disabled, the ALJ applies a five-step sequential analysis. 20 C.F.R. § 416.920. This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform her past relevant work, in light of her RFC; and (5) can make an adjustment to other work, in light of her RFC, age, education, and work experience. *Id.* § 416.920(a)(4). At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. *Id.* § 416.920(e); *Washington*, 906 F.3d at 1359. The RFC is an assessment of a claimant's ability to do work despite her impairments. 20 C.F.R. § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

4

A person with an RFC that allows her to perform light work is capable of "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). A person who can perform light work is also capable of performing sedentary work, provided that there are no limiting factors "such as loss of fine dexterity or inability to sit for long periods of time." *Id.* "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* § 416.967(a). In the context of sedentary work, "[o]ccasionally means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9p, 61 Fed. Reg. 34478-01, 34480 (July 2, 1996) (quotation marks omitted).

A claimant's impairments and related symptoms, including pain, may impose exertional and non-exertional limitations on her ability to meet the demands of certain jobs. 20 C.F.R. § 416.969a(a). Non-exertional limitations include a person's difficulty with reaching, handling, fingering, and feeling, which describe progressively finer usage of a person's arms and hands to perform work-related activities. *Id.* § 416.969a(c)(1)(vi); SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343 (1985). "Handling" describes movements that utilize a person's entire hand such as seizing, holding, grasping, and turning. SSR 85-15, 1983-1991

5

Soc. Sec. Rep. Serv. 343. "Fingering involves picking, pinching, or otherwise working primarily with the fingers." *Id.* (quotation marks omitted).

A party abandons an issue by making only passing reference to it or raising it "in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). A party also abandons an issue by raising it for the first time in her reply brief. *Id.* at 683. Here, Douglas has abandoned any arguments regarding the effects of her other impairments on her RFC by failing to raise them in her initial brief. *See Sapuppo*, 739 F.3d at 681. Douglas includes descriptions of other impairments in her brief's statement of the facts section. However, her arguments and subheadings on the issue of her RFC are dedicated solely to her impairment with her left hand. Douglas has also abandoned the arguments that the positions of surveillance system monitor, furniture rental consultant, and ticket taker do not satisfy the fifth step of the sequential analysis because she raises those arguments for the first time in her reply brief. Likewise, she has abandoned the issue of whether there was an apparent conflict between the VE's testimony and the DOT by raising it for the first time in her reply brief.

Here, substantial evidence supported the ALJ's determination that Douglas's RFC included a limitation to occasional handling and fingering with her left hand, which is the only RFC determination that is properly before us. The ALJ

accurately discussed Dr. Murray's findings and opinions.  Specifically, the ALJ discussed the symptoms that Douglas reported as to her left hand to Dr. Murray—including that she had regained strength with PT, had suffered nerve damage from the gunshot wound, had occasional throbbing and shaking, had little feeling, and had lost full function of the hand.  Next, the ALJ discussed Dr. Murray's findings as to that hand—including reduced sensation, abnormal gross fine and gross manipulations, an inability to pick up and manipulate objects, a reduced active range of motion, normal reflexes, and no tremors.  The ALJ did not address Dr. Murray's specific findings as to Douglas's grip and pinch strength with her left hand—*i.e.*, that her grip strength was moderately weak and her pinch strength was severely weak.  However, those limitations were encompassed by the ALJ's discussion of Dr. Murray's opinions, which included that Douglas had limitations with reaching, handling, feeling or grasping; had decreased sensation and grip strength; was capable of pushing and pulling with limitations; and was capable of lifting with both hands with limitations.  The ALJ explained that it gave Dr. Murray's opinions substantial weight because he examined Douglas and his opinions were consistent with his examination, Douglas's reported limitations, and the record as a whole.  *Winschel*, 631 F.3d at 1179; 20 C.F.R. § 416.927(c).

Next, although the ALJ did not discuss all of the relevant treatment records, the ALJ properly considered Douglas's limitations as to her left hand that were

reflected in the records from Grady and the unnamed clinic. *See Dyer*, 395 F.3d at 1211. Specifically, the ALJ noted that Douglas's left hand injury resulted from a gunshot wound—although the ALJ inaccurately stated that the gunshot wound was to her left hand rather than her upper back—that caused her pain and cramping. The ALJ also noted that Douglas's grip strength was reduced on March 2015. The ALJ accurately noted that Douglas did not report symptoms or receive treatment for her left hand on the majority of her visits to Grady, including on January 2015 and May 2015.

## II.

"[C]redibility determinations are the province of the ALJ," and we will "not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014).

A claimant may establish that she has a disability through her "own testimony of pain or other subjective symptoms." *Dyer*, 395 F.3d at 1210. In such a case, the claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). We will reverse the ALJ's decision if it contains no evidence of the proper application of the three-part

8

standard.  *Id.*  The ALJ may demonstrate that it applied the standard through its findings and discussion.  *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002).

Once a claimant establishes that her pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability."  *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  The ALJ will also consider a number of other factors, including the claimant's work history; her daily activities; the effectiveness and side effects of any medications; and treatment or other measures taken to alleviate pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

If the ALJ discredits the claimant's testimony as to her subjective symptoms, she "must clearly articulate explicit and adequate reasons for" doing so.  *Dyer*, 395 F.3d at 1210 (quotation marks omitted).  Where a claimant's treatment history is inconsistent with her subjective complaints or she fails to follow prescribed treatment that might alleviate her symptoms, the ALJ may find that her subjective testimony is inconsistent with the overall evidence in the record.  SSR 16-3p, 82 Fed. Reg. 49462-03, 49466 (Oct. 25, 2017).  The ALJ will investigate relevant reasons for a claimant's failure to pursue treatment, which may include that she is unable to afford treatment or does not have access to free or low-cost medical

services. *Id.* at 49466-67. If an ALJ relies upon a claimant's noncompliance with prescribed medical treatment as the "sole ground" for the denial of benefits and the record contains evidence showing that she was financially unable to comply with that treatment, the ALJ must determine whether the claimant could in fact afford the treatment. *Ellison*, 355 F.3d at 1275.

Here, the ALJ's determination that Douglas's subjective testimony regarding her symptoms was not credible was supported by substantial evidence, including the objective medical evidence and the evidence regarding Douglas's daily activities and treatment history. The ALJ followed the correct procedures in evaluating Douglas's testimony. Specifically, the ALJ discussed the objective medical evidence—including Dr. Murray's findings and opinions, diagnostic imaging results, and treatment records from Grady regarding Douglas's hands and lower back—to conclude that the severity of Douglas's alleged pain and symptoms did not match her conditions. *Holt*, 921 F.2d at 1223. Further, the ALJ discussed Douglas's daily activities; the duration, frequency, and intensity of her symptoms; the history of treatment that Douglas received; and the effectiveness of medications and therapy. *Foote*, 67 F.3d at 1561; SSR 16-3p, 82 Fed. Reg. at 49466; 20 C.F.R. § 416.929(c)(3).

The medical records from Grady support the ALJ's credibility determination. *See Mitchell*, 771 F.3d at 782. First, Douglas testified that she had no use whatsoever in her left hand. However, as discussed above, the evidence showed that she retained at least some function in that hand. Although the treatment notes often note her gunshot wound and the residual weakness in her left hand, she seldom sought treatment for her left hand. SSR 16-3p, 82 Fed. Reg. at 49466.

Second, Douglas testified she was severely limited in the use of her right hand due to her cysts and pain, to the point where she could hardly twist or lift objects. It is not entirely clear whether the ALJ's credibility determination encompassed Douglas's testimony as to her right wrist given that the ALJ did not mention Douglas's testimony as to that impairment. To the extent that the ALJ's credibility determination reached that testimony, however, it finds support in the record, including in Dr. Murray's finding that Douglas's strength in her right arm and hand was normal. Also, an OT session in June 2015 revealed that her wrist flexion and extension were "4-/5" for her right wrist and that she could grasp up to 31 pounds with her right hand. Further, after receiving OT for several months, Douglas reported significantly reduced pain in her right wrist.

Third, Douglas testified that her back pain sometimes prevented her from getting out of bed for days at a time and she could not lift objects such as a gallon

11

of milk due to the pain.  The medical evidence indicates that Douglas consistently suffered from severe back pain that she rated generally as an eight out of ten and sometimes as a nine out of ten, which supported her testimony.  However, Douglas's back pain benefitted from PT, and her therapists generally believed that her prognosis for restorative function was favorable.  20 C.F.R. § 416.929(c)(3).  Further, Dr. Murray noted that Douglas reported greatly reduced pain after she took Aleve.  20 C.F.R. § 416.929(c)(3).

Douglas's daily activities also supported the ALJ's determination.  *See* 20 C.F.R. § 416.929(c)(3).  Notes from Douglas's PT and OT sessions between September 2015 and February 2016 indicated that she performed her daily activities independently.  However, the majority of the notes indicated that Douglas's daily activities caused her pain and required extra time, with certain tasks such as combing her hair and preparing meals causing her particular difficulty.  The ALJ did not discuss the treatment notes from Douglas's first OT session in June 2015, which stated that she required assistance with dressing, bathing, and cooking.  In light of the evidence from the later sessions indicating that Douglas was able to perform her activities, albeit with difficulty, this omission does not undermine the substantial evidence supporting the ALJ's determination.  *See Crawford.*, 363 F.3d at 1158-59.  In addition, the ALJ properly considered Douglas's prior work history, which raised a question of whether her lack of

12

employment prior to her disability onset date was caused by her pain. *See* 20 C.F.R. § 416.929(c)(3).

Lastly, Douglas's treatment history supported the ALJ's determination. *See* SSR 16-3p, 82 Fed. Reg. at 49466; 20 C.F.R. § 416.929(c)(3). The ALJ correctly noted that Douglas did not require an assistive device to walk. She was prescribed a wrist brace—which the ALJ noted did not alleviate her pain—but was not prescribed other devices. Further, although Douglas reported that her wrist brace helped alleviate her pain, she did not wear it to her OT sessions. SSR 16-3p, 82 Fed. Reg. at 49466. Also, Douglas's course of treatment did not include surgery. The notes from her OT and PT sessions generally indicated that her prognosis for improved functioning was favorable. In addition, the ALJ's determination was supported by Douglas's noncompliance or limited compliance with the exercise prescribed as a part of her PT. SSR 16-3p, 82 Fed. Reg. at 49466. Relatedly, although the ALJ mentioned it only in passing, the ALJ arguably relied on Douglas's failure to take any medications before December 2014 as an indication that her impairments were not as severe as she alleged. 20 C.F.R. § 416.929(c)(3). To the extent that it was error to do so without first considering Douglas's financial situation, the error is not reversible because the ALJ's decision did not rest solely on this factor. *See Ellison*, 355 F.3d at 1275.

**AFFIRMED.**