[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 23-10157

Non-Argument Calendar

————————————

CRAIG A. SMITH, II,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:21-cv-00551-PRL

————————————

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Craig Smith appeals the judgment affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") to deny his application for a period of disability and disability insurance benefits (collectively, "disability benefits"). He contends that the ALJ failed to apply proper legal standards and made findings not supported by substantial evidence. After careful review, we vacate and remand for further proceedings.

## I.

Smith is a veteran who applied for disability benefits in December 2019, alleging that he became disabled in September 2018 due to a combination of diabetes, sleep apnea, high cholesterol, narcolepsy, and insomnia. He indicated that his narcolepsy made him feel completely drained daily and that he could not work due to excessive sleepiness and the need for scheduled naps. After the agency denied his applications initially and on reconsideration, Smith requested a hearing before an administrative law judge.

## A.

During the telephonic hearing, Smith testified about his narcolepsy condition. He was diagnosed with "narcolepsy with reverse REM sleep with sleep hypnosis" while in the military. He experienced narcolepsy episodes two or three times a day, every day, lasting from minutes to hours, which caused an inconsistent

sleep schedule and "heavy sleep deprivation," making it difficult to concentrate when awake. Smith would fall asleep at random times and wake up feeling paralyzed and disoriented. He took medication, which helped some but not much. He also reported that employers had been unwilling to work with his narcolepsy by offering nap breaks during the day.

The record shows that Smith sought treatment for his narcolepsy from the sleep clinic at the Orlando Veterans Affairs Medical Center. Over two visits in August 2018, Smith reported worsening symptoms, including sleep paralysis, hypnagogic[1] hallucinations, hypersomnia (excessive tiredness), and naps that were "hard to come out of." The treatment notes reflect a diagnostic impression of "narcolepsy uncontrolled," and a sleep clinic physician, Dr. Sherwin Mina, started Smith on the stimulant medication modafinil.

Smith returned to the sleep clinic in September 2018, reporting no improvement from modafinil, as well as symptoms including sleep attacks, sleep paralysis, hypnagogic hallucinations, and cataplexy (muscle weakness). The treatment notes reflect a diagnostic impression of "narcolepsy on [m]odafinil without improvement of his symptoms," and Dr. Mina increased his dosage.

Follow-up visits in October and November 2018 were similar. On October 24, 2018, Smith complained of worsening sleep, as

---

[1] The term "hypnagogic" refers to the transitional state between wakefulness and sleep.

well as symptoms including sleep paralysis, hypnagogic hallucinations, and cataplexy.  The clinic diagnosed sleep deprivation and narcolepsy, which was "not well controlled," and Dr. Mina increased the morning dose of modafinil.  On November 26, 2018, Smith reported continuing to experience "sleep attacks daily where he sleeps for 1–3 hours" and wakes up confused and dazed.  Dr. Mina increased the afternoon dose of modafinil.

Smith returned to the sleep clinic on February 25, 2019, reporting no improvement since increasing his medication.  Smith also reported that his sleep pattern was "all over" because he was taking care of a young baby as a full-time dad.  The physician, Dr. Vanthanh Ly, noted that Smith's narcolepsy was "not well controlled due to psychosocial stress factors," and continued the same dosage of modafinil.

Smith visited Dr. Mina at the sleep clinic on May 28, 2019, reporting that he continued to have "sleep attacks" but was "managing" with modafinil and marijuana.  Dr. Mina noted a diagnostic impression of "narcolepsy without cataplexy" that was "stable at this time," and he prescribed the same dosage of modafinil.  At a follow-up visit with Dr. Mina on August 28, 2019, Smith reported that modafinil was "helpful," but he was having difficulty with insomnia and staying asleep.  Dr. Mina noted that Smith's narcolepsy was "stable on modafinil," although his insomnia was "not well controlled."

Meanwhile, on December 13, 2018, Dr. Felix Mejias-Cartagena, a physiatrist, conducted an in-person examination of Smith,

reviewed his VA records, and completed a Narcolepsy Disability Benefits Questionnaire for a separate VA disability evaluation.[2] Based on Smith's narcolepsy diagnosis and medications, as well as his complaints of excessive daytime sleepiness, sleep attacks, cataplexy, sleep paralysis, and hypnagogic hallucinations, Dr. Mejias-Cartagena concluded that Smith's narcolepsy would impact his ability to work. Nearly one year later, on December 6, 2019, Dr. Chad Masters completed a similar questionnaire based on a review of Smith's VA file, likewise concluding that Smith's narcolepsy would affect his ability to work. Dr. Masters explained, "Extreme daytime fatigue and lack of concentration along with ability to randomly fall asleep during the day—all of these lead to issues with veteran completing tasks at work." Both evaluations noted that Smith had undergone a polysomnogram in 2015, which was unremarkable.

On June 27, 2020, Smith was seen for an in-person Social Security consultative examination performed by Dr. Benyam Yoseph. Dr. Yoseph found that, while Smith had no physical limitations, his narcolepsy and insomnia affected his ability to "focus or concentrate." State agency medical consultants who reviewed Smith's medical records, however, opined that his impairments were not severe enough to qualify for disability benefits.

---

[2] As a result, the VA raised its disability rating for Smith's narcolepsy from 10% to 80%.

**B.**

After the hearing, the ALJ issued a written decision concluding that Smith was not disabled.  The ALJ found that Smith had the medically determinable impairments of narcolepsy, obesity, depression, and anxiety.  But, in the ALJ's view, Smith did not have a "severe impairment"—that is, an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities.

The ALJ explained that she found persuasive the opinions of the state agency medical consultants, which were "consistent with the medical record that reveals that the narcolepsy was stable on [m]odafinil."  In contrast, the ALJ stated, Dr. Yoseph's "opinion that the claimant [was] unable to focus or concentrate [was] not persuasive" because it was inconsistent with Dr. Yoseph's "normal mental status examination findings."  The ALJ also found unpersuasive the opinions of the doctors who evaluated Smith's narcolepsy for the VA, stating that they were "not persuasive as they [we]re not consistent with observable clinical signs of record and other opinion evidence and are based on symptoms."  In support of that conclusion, the ALJ cited treatment notes indicating that Smith was "managing" or "stable" on his medication and the normal examination conducted by Dr. Yoseph.

The Appeals Council denied Smith's request for review of the ALJ's decision, and the district court affirmed.  Smith appeals.

## II.

"In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). We must affirm a decision that is supported by substantial evidence even if the evidence preponderates against the agency's findings. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). And we may not reweigh the evidence, decide the facts anew, or substitute our judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178.

Nevertheless, we will not "merely rubber-stamp a decision." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019). "We must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (quotation marks omitted). A decision is not supported by substantial evidence if the ALJ "reached the result that [she] did by focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence."). The ALJ also must state with some measure of clarity the grounds for her decision, and we will not affirm "simply because some

rationale might have supported the ALJ's conclusions." *Winschel*, 631 F.3d at 1179.

A claimant is entitled to disability benefits if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that is expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A). Regulations outline a five-step, sequential evaluation process ALJs must use to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178; *see* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At the second step, "the ALJ must determine if the claimant has any severe impairment." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). A "severe impairment" is defined by regulations as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities," regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 416.920(c). "This step acts as a filter; if no severe impairment is shown the claim is denied," but if a severe impairment is present, the ALJ proceeds to consider whether the claimant can still reasonably be expected to work. *Jamison*, 814 F.2d at 588.

"A claimant's burden to establish a severe impairment at step two is only mild." *Schink*, 935 F.3d at 1265 (quotation marks omitted). We have described step two as merely a "threshold inquiry" that "allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th

Cir. 1986).  And "[w]e have recognized that an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work."  *Schink*, 935 F.3d at 1265 (quotation marks omitted).

Based on these standards, substantial evidence does not support the ALJ's conclusion that Smith lacked a severe impairment. Rather, the record compels the conclusion that Smith's narcolepsy and related symptoms "cannot be considered only 'slight' or 'trivial' abnormalities."  *Id.*

Smith has a longstanding diagnosis of narcolepsy, and he sought treatment for worsening symptoms at a sleep clinic beginning in August 2018.  Over several visits in the following months, he reported experiencing daily symptoms to include excessive daytime tiredness, sleep attacks, sleep paralysis, hypnagogic hallucinations, and cataplexy.  The clinic repeatedly diagnosed sleep deprivation and narcolepsy, which it described as "uncontrolled" or "not well controlled," and prescribed medication, increasing the dosage several times over successive visits.

It does not appear the ALJ disputes that, in its uncontrolled state, Smith's narcolepsy could have a substantial effect on his ability to work.  As both Dr. Mejias-Cartagena and Dr. Masters indicated, excessive fatigue and random sleep attacks during the day could be expected to interfere with an individual's ability to work, whether through lack of concentration or falling asleep on the job.

Rather, the ALJ reasoned that Smith's "impairments were controlled with medication," repeatedly citing Dr. Mina's treatment notes in May 2019 and August 2019 that Smith's narcolepsy was "stable" on modafinil. Whether a condition is "stable," however, says little on its own about whether the condition is disabling. *See Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (stating that the term "stable" "could mean only that [a claimant's] condition has not changed, and she could be stable at a low functional level"). And nothing in the treatment notes suggests that Smith's prescribed medication, which he admits helps his condition, rendered his narcolepsy symptoms "only 'slight' or 'trivial' abnormalities." *Schink*, 935 F.3d at 1265.

In May 2019, Smith reported that, while he was "managing" with modafinil, he still suffered daytime "sleep attacks," which, as we've mentioned above, could interfere with his ability to work. And in August 2019, Dr. Mina noted that, while Smith's narcolepsy was "stable on modafinil," which he had reported was "helpful," his insomnia was "not well controlled." Insomnia can be a symptom of narcolepsy[3], as well as a side effect of the stimulant modafinil, according to the treatment notes, and could reasonably be expected to contribute to daytime fatigue. So it should have been, but apparently was not, considered by the ALJ when assessing the effects of Smith's narcolepsy. *See Cowart v. Schweiker*,

---

[3] National Institutes of Health, *Narcolepsy*, NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKE, https://www.ninds.nih.gov/health-information/disorders/narcolepsy (last visited Nov. 6, 2023).

662 F.2d 731, 737 (11th Cir. 1981) (noting that "side effects of medication could render a claimant disabled or at least contribute to a disability"). Thus, it appears the ALJ "reached the result that [she] did by focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter*, 791 F.2d at 1548.

The ALJ's other cited reasons do not provide reasonable grounds for finding Smith's narcolepsy non-severe. For starters, whether Smith's narcolepsy was stable or controlled by mid-2019 is not inconsistent with Dr. Mejias-Cartagena's opinion from December 2018, when the condition was not well controlled. The treatment notes reflect that Smith's narcolepsy was "uncontrolled" or "not well controlled" from September 2018, when disability onset allegedly occurred, through at least May 2019, when Dr. Mina first noted that the condition was "stable." And the ALJ did not make any findings about Smith's narcolepsy in its uncontrolled state, which covered a period relevant to his claim. While the ALJ cited treatment notes from February 2019, she inaccurately stated that Dr. Ly had "noted this impairment was well controlled," instead of "<u>not</u> well controlled."

Nor do we see any inconsistency between Smith's disability claim and Dr. Yoseph's "unremarkable" examination in July 2020. Smith's claim is based primarily on narcolepsy symptoms, including excessive daytime fatigue and random sleep attacks, along with the immediate confusion that arises upon waking from these sleep attacks—not any other physical inability to perform. And the mere fact that Smith was "alert" and "oriented" during a one-time

mental-status examination hardly supports a conclusion that he could remain alert and on task in a work setting on a sustained basis. *See Schink*, 935 F.3d at 1266 ("[T]he ability to complete tasks in settings that are less demanding than a typical work setting does not necessarily demonstrate an applicant's ability to complete tasks in the context of regular employment during a normal workday or work week."). Likewise, that Smith may have been able to structure his life while not working to manage his condition—such as timing medication and taking naps—tells us very little "about his ability to function in a stressful work setting" on a sustained basis. *Id.* Indeed, the treatment notes reflect that stress exacerbates the symptoms of Smith's narcolepsy.

Finally, the mere fact that Smith declined an alternative medication, with its own potential benefits and risks, is not enough, on this record, to show that his condition was not severe. The record shows that Smith actively pursued treatment for his narcolepsy and took prescribed medication, which after several increases in dosage helped him manage the condition to some degree. Whether or not Smith's impairments, when treated, would be compatible with employment—the question reserved for steps four and five of the sequential analysis—the effects of treatment on Smith, and his choice not to pursue an alternative medication while actively seeking appropriate treatment, are not substantial evidence that his narcolepsy was non-severe.

For these reasons, the ALJ's conclusion at step two of the analysis that Smith did not have any severe impairment is not

supported by substantial evidence.  The record shows that, regard-less of whether his impairments could be compatible with employ-ment, the symptoms of his narcolepsy cannot be considered "only 'slight' or 'trivial' abnormalities." *Schink*, 935 F.3d at 1265. Because the ALJ stopped at step two and did not consider the remaining steps in the sequential analysis, we vacate the judgment and re-mand with instructions to remand this case to the Commissioner for further proceedings on Smith's disability claim.

**VACATED AND REMANDED.**